2003 ME 131

**RAM'S HEAD PARTNERS, LLC**

v.

**TOWN OF CAPE ELIZABETH.**

Supreme Judicial Court of Maine.

Argued: May 14, 2003.
Decided: Nov. 4, 2003.

Gerald F. Petruccelli (orally), Petruccelli, Martin & Haddow, LLP, Portland, for plaintiff.

Michael H. Hill (orally), Thomas G. Leahy, Monaghan, Leahy, Hochadel & Libby, LLP, Portland, for defendant.

Panel: CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.*

CALKINS, J.

[¶ 1] Ram's Head Partners, LLC, appeals from a judgment of the Superior Court (Cumberland County, *Crowley, J.*) affirming a decision of the Cape Elizabeth Board of Assessment Review that denied property tax abatements for three shore-front lots for the 2001–02 tax year. Ram's Head does not contend that its land was overvalued, but rather that it was unlawfully discriminated against because neighboring land owned by the Sprague Corporation was grossly undervalued. Because the Board made insufficient findings and applied an incorrect legal standard, we vacate the judgment.

## I. BACKGROUND

[¶ 2] Ram's Head owns three lots on the water in southwest Cape Elizabeth that are surrounded on land by parcels owned by the Sprague Corporation. One of the Ram's Head lots (lot 49–2) contains a seasonal cottage and two (lots 49–1 and 49–4) are vacant. The assessed values of the land of these lots were $502,400, $541,200, and $590,400, respectively, for the 2001–02 tax year.

[¶ 3] Ram's Head sought abatements in October 2001. The Town Assessor denied the abatements, and Ram's Head appealed to the Town's Board of Assessment Review, which held a hearing in February 2002. The hearing was tape-recorded, but the recording was apparently of extremely poor quality, because the transcript is rid-

---

* Saufley, C.J., sat at oral argument but did not participate in the decision.

dled with notations of "(inaudible)," sometimes dozens of times per page.

[¶ 4] On behalf of Ram's Head, John P.M. Higgins made written and oral presentations based solely on the ground of discrimination; he did not contend that the Ram's Head lots were assessed above their market value. In comparison to Ram's Head's two vacant lots valued at $541,200 and $590,400, Higgins noted that among vacant neighboring Sprague properties, three waterfront lots were assessed at $4700 to $26,500 and seven water-view lots were assessed at $7800 to $12,200. Higgins also noted that, compared to Ram's Head's $502,400 waterfront lot with a seasonal cottage, seven Sprague waterfront lots with seasonal structures were valued at $143,500 to $329,300.

[¶ 5] Higgins contended that the Ram's Head and Sprague lots are similarly situated. Their location and acreage are very similar and, because of the privacy provided by the large surrounding Sprague holdings, unique. There are no conservation easements or similar encumbrances. Both Ram's Head and Sprague have intrafamily agreements preventing transfers to outsiders without unanimous shareholder consent, but Higgins argued that these are self-imposed restrictions that could be removed as easily as they were put in place and thus do not really affect market value. The only significant distinction is that the Sprague Corporation's recorded subdivision plan, approved by the Planning Board when it waived certain standards in the Town ordinances, provides that any sale outside the Sprague family will require the subdivision to go before that Board again and be subject to the previously-waived rules on, inter alia, road widths, open space preservation, and affordable housing. This provision is not triggered, however, by mortgages obtained by the family members who lease their homes from the Sprague Corporation, nor by leases of up to five years to outsiders.

[¶ 6] Town Assessor Matthew Sturgis made a presentation explaining how the Ram's Head assessments had been made by the sales comparison approach. As far as can be understood from the deficient transcript, Sturgis did not fully explain how the Sprague lots had been assessed. He suggested that the requirement of Planning Board approval and unanimous shareholder consent was a "substantial obstacle" to sale of the Sprague land, but he did not attempt to quantify the effect of this obstacle on market value. In the end, Sturgis appeared to admit that the Sprague lots were substantially undervalued, saying that "we have a thirty-lot problem that should be corrected, whereas we have forty-one hundred seventy other parcels" in the Town that are more appropriately assessed.

[¶ 7] The Board upheld the assessments and affirmed the assessor's denial of the abatement. The Board did not make any findings beyond the following contained in its minutes:

Board members ... indicated that Mr. Higgins may be justified in his accusations of unfair tax discrepancies when comparing valuations assessed against his property and the Sprague properties. They, however, upheld the merit of Mr. Sturgis' assessment with regard to the other comparable properties within the Town. The conclusion was made that the best viable means of correcting the imbalance was to update the valuations of the Sprague properties and even the field of their tax burden. If an abatement was granted to Mr. Higgins, the Board determined that the result would be an offsetting of all the other comparable evaluations [sic ] within the Town, and an undermining of the overall Town assessments. The Board could

find no case for discrimination relative to all comparable properties in Cape Elizabeth, and determined that the valuation of the Ram's Head properties was not "manifestly unjust."

[¶ 8] Ram's Head appealed to the Superior Court pursuant to M.R. Civ. P. 80B, and the court affirmed the Board's decision. Ram's Head then brought this appeal.

## II. LEGAL STANDARD FOR PROVING UNJUST DISCRIMINATION

[¶ 9] A town's tax assessment is presumed to be valid. *City of Biddeford v. Adams,* 1999 ME 49, ¶ 13, 727 A.2d 346, 349. To be entitled to an abatement, a taxpayer must show that an assessment is "manifestly wrong" by proving "that the property is substantially overvalued, there was unjust discrimination, or that the assessment was fraudulent." *Id.* Unjust discrimination in taxation violates both article IX, section 8 of the Maine Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See, e.g., Shawmut Mfg. Co. v. Town of Benton,* 123 Me. 121, 127, 122 A. 49, 52 (1923).

[¶ 10] We have stated that "[t]axpayers can prove discrimination only if they show that the assessor's system necessarily results in unequal apportionment." *Adams,* 1999 ME 49, ¶ 14, 727 A.2d at 349. This standard must be understood in the context of the federal constitutional rule that forbids "[i]ntentional systematic undervaluation by state officials of other taxable property in the same class." *Allegheny Pittsburgh Coal Co. v. County Comm'n,* 488 U.S. 336, 345, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989); *see also Kittery Elec. Light Co. v. Assessors of the Town of Kittery,* 219 A.2d 728, 741 (Me.1966) (requiring proof of "intentional and systemat-

ic undervaluation"). Statements in our opinion in *Kittery Electric Light* suggest that it is necessary to prove undervaluation of "the *general mass* of taxable property" or "of other properties generally," *id.* at 740–41, but this standard cannot be squared with federal equal protection law. "[T]he constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners." *Allegheny Pittsburgh Coal Co.,* 488 U.S. at 343, 109 S.Ct. 633, *quoted in Moser v. Town of Phippsburg,* 553 A.2d 1249, 1250 (Me.1989); *see also id.* at 346 ("[T]he fairness of one's allocable share of the total property tax burden can only be meaningfully evaluated by comparison with the share of others similarly situated relative to their property holdings.").

[¶ 11] The undervaluation of one set of similarly situated properties can support a finding of unjust discrimination, even when there is no undervaluation of the general mass of property. *Cf. Adams,* 1999 ME 49, ¶¶ 15, 17, 19, 727 A.2d at 350 (affirming finding of discrimination where assessor granted reduction to one waterfront neighborhood but not another). On the other hand, "some specific instances here and there" of undervaluation, "[s]poradic differences in valuations," or "mere errors of judgment on the part of the assessors" do not necessarily establish unjust discrimination. *Kittery Elec. Light Co.,* 219 A.2d at 740; *see also Sunday Lake Iron Co. v. Township of Wakefield,* 247 U.S. 350, 353, 38 S.Ct. 495, 62 L.Ed. 1154 (1918) ("[M]ere errors of judgment by officials will not support a claim of discrimination. There must be something more— something which in effect amounts to an intentional violation of the essential principle of practical uniformity.").

[¶ 12] The Town argues that Ram's Head cannot prove discrimination without

evidence of the value of the Sprague lots. We disagree. There is no reason that Ram's Head cannot prove discrimination by showing that the neighboring Sprague lots are assessed at drastically lower valuations; that there are no distinctions between the properties that justify the disparity; and that any rationale offered by the Town for the lower valuation is unfounded or arbitrary. This view finds support in *City of Biddeford v. Adams* where we upheld a finding of discrimination due to an unsupported 12.5% discount that had been given to one neighborhood but not a similarly situated neighborhood. *Adams,* 1999 ME 49, ¶¶ 15–17, 727 A.2d at 350. We specifically rejected the City's argument that the taxpayers were required "to present credible affirmative evidence of the just value of each property at issue." *Id.* ¶ 20, 727 A.2d at 350.

[¶ 13] Most property tax discrimination cases involve a defined methodology that results in unequal treatment. *E.g., Allegheny Pittsburgh Coal Co.,* 488 U.S. at 338–41, 345, 109 S.Ct. 633 (finding that although the state constitution and statutes required uniform assessments, the assessor fixed assessments based on last sale price, resulting in newly-purchased property being assessed at eight to thirty-five times as much as comparable neighboring properties). That does not mean, however, that intentional systematic undervaluation cannot be found based on a sufficient pattern of arbitrary reductions below market value, even in the absence of evidence of an explicitly discriminatory methodology. The finding of unjust discrimination that we affirmed in *City of Biddeford v. Adams* depended in part on the fact that the assessor had arbitrarily granted a dis-

count to one neighborhood based on his "gut feeling." *Adams,* 1999 ME 49, ¶ 3, 727 A.2d at 348. Similarly, the Supreme Court of Wisconsin found unconstitutional discrimination and ordered abatements for two taxpayers who demonstrated that five comparable, but older, properties were undervalued by an assessor who ignored recent sales because he thought the buyers were paying too much. *State ex rel. Levine v. Bd. of Review,* 191 Wis.2d 363, 528 N.W.2d 424, 428 (1995). There the assessor "admitted that his method of assessment was 'arbitrary' and that it resulted in certain older homes being assessed at a dramatically lower amount than they were traded for on the open market." *Id.*

[¶ 14] The Board's findings show that it believed that it was not enough for Ram's Head to show discrimination vis-a-vis the Sprague properties, but that Ram's Head had to show discrimination relative to all comparable properties in Cape Elizabeth. Comments by the Board chairman during the deliberations also show that the Board required Ram's Head to prove discrimination compared to the "locality as a whole." [1] The Board thus erred as a matter of law, which requires us to remand the case for further proceedings applying the correct legal standard.

[¶ 15] The Board also seems to have misunderstood the legal remedy for unjust discrimination. The Board's findings, along with members' comments during deliberations, suggest that it believed the only answer to the undervaluation of the Sprague properties was to have those assessments raised, rather than granting abatements to Ram's Head. That is incorrect. We held eighty years ago that an abatement is the proper remedy for unjust

---

1. Although such comments do not constitute findings of the Board, we will examine them to shed light on incomplete or ambiguous findings. *See Widewaters Stillwater Co. v.*

*Bangor Area Citizens Organized for Responsible Dev.,* 2002 ME 27, ¶¶ 9–10, 790 A.2d 597, 600.

discrimination. *Shawmut Mfg. Co.,* 123 Me. at 128, 122 A. at 52. Most recently, we affirmed the grant of an abatement for discrimination in *Adams,* 1999 ME 49, ¶¶ 24–25, 727 A.2d at 351–52. Moreover, the United States Supreme Court has made it clear that an abatement, even to below just value, is the constitutionally required remedy for discrimination: a taxpayer whose similarly-situated neighbors have had their properties intentionally and systematically undervalued "may not be remitted by the State to the remedy of seeking to have the assessments of the undervalued property raised." *Allegheny Pittsburgh Coal Co.,* 488 U.S. at 346, 109 S.Ct. 633 (reversing state court judgment that denied abatement); *accord, e.g., Cumberland Coal Co. v. Bd. of Revision of Tax Assessments,* 284 U.S. 23, 29–30, 52 S.Ct. 48, 76 L.Ed. 146 (1931); *Sioux City Bridge Co. v. Dakota County, Nebraska,* 260 U.S. 441, 446, 43 S.Ct. 190, 67 L.Ed. 340 (1923). The Board erroneously believed that even if Ram's Head proved unjust discrimination it would not be entitled to abatements. This incorrect understanding may have affected its analysis of the discrimination issue and is an additional basis for our remand to the Board.

## III.  INSUFFICIENT FINDINGS

[¶ 16] "Meaningful judicial review of an agency decision is not possible without findings of fact sufficient to apprise the court of the decision's basis." *Chapel Rd. Assocs. v. Town of Wells,* 2001 ME 178, ¶ 10, 787 A.2d 137, 140. When the denial of a tax abatement is not supported by factual findings that are adequate to permit meaningful appellate review, we will vacate the decision and remand for findings. *Christian Fellowship & Renewal Ctr. v. Town of Limington,* 2001 ME 16, ¶¶ 14, 19, 769 A.2d 834, 838, 840–41.

[¶ 17] The Board's limited findings in this case are insufficient to explain its decision to deny Ram's Head's abatement requests. Our judicial review is substantially hampered because we cannot be sure whether that decision was based solely on the legal errors discussed above, or on an unstated finding that Ram's Head had failed to meet its burden to prove unjust discrimination. Therefore, we vacate the Board's decision and remand the matter to the Board.

## IV.  REMAND FOR NEW HEARING

[¶ 18] We remand this matter because the Board applied incorrect legal standards and made insufficient factual findings. While it is generally sufficient in such situations to remand for a board to make sufficient findings and apply the correct legal standard to those findings, in this case we must require a new hearing. The record of the hearing before the Board is incomplete due to the numerous gaps in the transcript. Although it is generally the responsibility of the appellant to see that a proper record is preserved for appeal, when a municipal board undertakes to record its own proceedings, as the Board did here, it should do so in a way that can produce a reviewable transcript. *See* 30–A M.R.S.A. § 2691(3)(E) (1996) (board of appeals statute, made applicable to boards of assessment review by 30–A M.R.S.A. § 2526(6)(G) (1996), and providing that the record includes the "transcript or tape recording of testimony, if such a transcript or tape recording has been prepared by the board"). Because the present transcript is inadequate the Board will have to hold a new evidentiary hearing to provide a reviewable record. *See Sanborn v. Town of Eliot,* 425 A.2d 629, 631 (Me. 1981).

[¶ 19] On remand, the Board should make detailed findings, consistent with the

922

correct legal standards, on whether the Ram's Head and Sprague properties are similarly situated (a fact the Town essentially conceded at oral argument); if so, whether the Sprague properties were undervalued, with specific findings on whether the Board is persuaded by the explanations offered by the Town for the disparity in assessments; and whether any undervaluation was intentional and systematic or resulted from mere errors in judgment by the assessor. If the Board determines that Ram's Head has shown unjust discrimination, it must grant appropriate abatements.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to remand to the Cape Elizabeth Board of Assessment Review for further proceedings consistent with this opinion.