STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. Ap-03-7
JLH —HAN— 2/4/2004

John T. Roberts,
    Appellant

v.

Order on Appeal

Town of Southwest Harbor,
    Appellee

DONALD L. GARBRECHT
LAW LIBRARY

MAR 8 2004

Pursuant to 36 M.R.S.A. § 838 and M.R.Civ.P. 80B, John T. Roberts appeals from a decision of the Town of Southwest Harbor Board of Appeals (the Board) denying his administrative appeal from the Town's tax assessor's denial of his request for a municipal tax abatement for property that he owns in the Town. The court has considered the parties' written submissions on this appeal.[1]

The Town has moved to dismiss this appeal because Roberts did not file his brief within the scheduling deadline. Although that brief was roughly one week late, the court denies the motion to dismiss in part because, for the reasons set out below, Roberts' appeal is not successful on the merits.

A taxpayer must prove that he is entitled to an abatement of his municipal property tax in one of three alternative ways: the taxpayer bears the burden of establishing "'that the property is substantially overvalued, there was unjust discrimination, or that the assessment was fraudulent.'" *Ram's Head Partners, LLC v. Town of Cape Elizabeth*, 2003 ME 131, 834 A.2d 916. 919, *quoting City of Biddeford v. Adams*, 1999 ME 49, ¶ 13, 727 A.2d 346, 349. Here, Roberts relies on the second of these theories and claims that his 2001 tax assessment was predicated on a discriminatory

---

[1] The Town correctly notes that Roberts' submission includes material that exceeds the scope of the record on appeal. The court has not considered that extra-judicial material.

1

methodology.[2] Such discrimination exists only if the tax assessor's valuation methodology "necessarily results in unequal apportionment" of a municipality's real estate taxes, which, by constitutional requirement, must be allocated according to the "just value" of those assets. *City of Biddeford*, 1999 ME 49, ¶ 14, 727 A.2d at 349; *see* ME. CONST. art. 9, § 8. A tax assessment system can be established as unlawfully discriminatory in one of two different ways: directly, that is, through proof that the methodology "results in unequal treatment," or inferentially, that is, though proof of "a sufficient pattern of arbitrary reductions below market value, even in the absence of evidence of an explicitly discriminatory methodology." *Ram's Head Partners*, 2003 ME 131, ¶ 13, 834 A.2d at 920. Because a municipality's tax assessment is presumed to be valid, *id*, ¶ 9, 834 A.2d at 919, the taxpayer bears the burden of persuading the administrative entity that the assessment is in fact discriminatory.

Although he frames his arguments broadly both in his notice of appeal directed to the board and in the complaint at bar, at the hearing before the Board Roberts was quite precise in establishing the factual basis for his discrimination claim. As he explained, in order to arrive at a tax assessed value, the Town examines several components of the subject parcel and calculates a value for each of those components, the sum of which constitutes the total assessed value. Roberts' property was deemed to consist of frontage, the home site section and "rear land." (The value of lot improvements was also considered.) Roberts presented evidence at the Board's hearing that for tax year 1998, the rear land was assigned a value of $12,240. This was 4% of the value of the home site. Then, by 2001, the assessed value of the rear land had increased to $160,500. As a result,

---

[2] At several points during the public hearing on Roberts' abatement appeal, the focus of the discussion became more akin to an overvaluation analysis. However, an overvaluation claim is distinct from a discrimination claim, and Roberts' presentation at the board made clear that he was pursuing the former. Were it otherwise, it would fail because in order to obtain an abatement based on a claim of overvaluation, the taxpayer must present evidence of just value, that the board can then evaluate and then compare to the assessed value. *See City of Waterville v. Waterville Homes, Inc.*, 655 A.2d 365, 366-67 (Me. 1995). Here, Roberts presented no evidence regarding the value of his property, *see* T. 19, and thus he could not sustain an overvaluation claim as a matter of law. The absence of such evidence, on the other hand, does not foreclose a taxpayer from pursuing a claim of unjust discrimination because such a claim is based on a distinct theory of harm. *City of Biddeford*, 1999 ME 49, ¶ 22, 727 A.2d at 351.

the assessed value of the rear land relative to the assessed value of the home site had increased from 4% to 25%. Roberts argued to the Board that this increase was discriminatory. T. 23. To advance this argument, Roberts relied on the ratios of several rear land to home site valuations extracted from other assessment records.[3] Of the parcels that were constituted of both home site and rear land sections, the ratios ranged from 3% to 100% (that is, equal values assigned to the home site and rear land). In the end, Roberts argued that the assessment of his property was discriminatory because that assessment had increased the value of his rear land from 4% to 25% of the value of the home site on his property. Roberts made clear that he was not challenging the assessment of any portion of his property other than the rear land component. T. 6.

After Roberts completed his presentation, the Town moved to dismiss Roberts' appeal on two grounds: that Roberts had not demonstrated that the assessment of his property was the product of unjust discrimination, and that a challenge to the assessment of a portion of a whole parcel could not establish an improper assessment of the parcel in its entirety. The board considered the merits of this motion[4] and voted, without dissent,

---

[3] The record on this appeal is rather loosely constructed. When he filed his written argument on this appeal. Roberts filed a packet of materials entitled, "STATEMENT of John T. Roberts." He also filed a transcript of the proceedings held before the Board. From that transcript, it appears that Roberts had submitted a copy of his "STATEMENT" to the Board. The transcript demonstrates that at the hearing, Roberts submitted and used a separate summary of some of the information included in his "STATEMENT." That summary, however, was not included in the "STATEMENT" itself. Then, several days after he filed his brief on this appeal, he filed several additional records, including the statement, the notice of appeal to the board from the assessor's underlying decision, as well as the written decision issued by the board. Neither party has raised an issue regarding the sufficiency of the record on appeal.

[4] In the posture of this case, the court does not address the procedural question of whether such a motion is proper. When the Town made its motion during the hearing, Roberts did not object, and on this appeal he does not raise any issue about whether the Town had the right to make the motion and or whether the Board had the authority to entertain it. The record on this appeal does not include any ordinances or other authority that established the procedure for tax abatement procedures before a board such as the Town's Board of Appeals, when it sits as a board of assessment review. Although the Board received this case after Roberts appealed the municipal tax assessor's decision to deny his abatement request, Roberts presented his case to the Board, treating it as if it were acting in a fact-finding capacity rather than in an appellate capacity. *Cf. Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773, 775 (discussing capacity of a zoning board of appeals

that Roberts "failed to prove discrimination against his property assessment compared to other classes of property in the Town of Southwest Harbor." *See* "Findings of Fact, Conclusions and Decision" dated February 11, 2003.

Roberts first argues that because the Town had not presented any evidence, the Board's decision – made on the basis of something comparable to a courtroom motion under M.R.Civ.P. 50 – must be examined on the basis of the evidence taken in the light most favorable to him. Assuming, without deciding, that the Board's motion was proper, *see* note 4 *supra,* the standard of review urged by Roberts is not the correct one. In a proceeding where someone other than the factfinder must decide such a motion, then Roberts' conclusion is correct. In that instance, the judge or other presiding officer must account for the range of decisions that the factfinder could reach based on the evidence that had been presented. However, in a case such as this, where the Board was asked to act on the motion, and where the same Board also would act as factfinders, then the Board is entitled to make factual decisions and act on the motion based on that factual analysis. *See Smith v. Welch*, 645 A.2d 1130, 1132 (Me. 1994). Therefore, in this case, the Board was entitled to consider the merits of Roberts' evidence in a manner far less deferential than would a judge in the course of a jury trial, for example. It follows that the Board's decision must now be reviewed in the same way that factual findings are assessed on appeal: those findings must be upheld "unless the evidence compels a contrary finding." *Northeast Empire Limited Partnership #2 v. Town of Ashland*, 2003 ME 28, ¶ 9, 818 A.2d 1021, 1024.

Here, Roberts' evidence did not compel the Board to conclude that the assessment of his property resulted from an unjustly discriminatory methodology. The nature of an abatement proceeding must be seen in light of the fundamental underlying principle, namely, that the taxation burden imposed on landowners must be apportioned fairly, and that fair apportionment is a function of an assessment of the just value of their real property. Thus, in the end, the question is whether Roberts' property, when viewed as a single entity (because that is the basis for computing his tax liability) has been fairly

---

to function as a fact-finding or appellate entity). Thus, for purposes of this case, the court considers the Board's proceedings as if the Board's charge were to make factual determinations on Roberts' claim of discrimination.

appraised relative to other parcels of real estate. The evidence does not meaningfully demonstrate that the value of Roberts' property, viewed as a whole, was overvalued in comparison to other similarly situated properties. *See Ram's Head Partners*, 2003 ME 131, ¶ 11, 834 A.2d at 919. The Town increased its assessment of one portion of his land. This in itself does not establish discrimination. Further, Roberts' efforts to compare the ratio of home site-back land assessments between his own property and those of others fail for at least two reasons. First, when a taxpayer attempts to prove discrimination by comparing the assessed value of his property to that of other properties, he must prove "that there are no distinctions between the properties that justify the disparity. . . ." *Id.*, ¶ 12, 834 A.2d at 920. Here, no such evidence was presented to the Board. Second, even if that ratio associated with Roberts' property were significant, it is well within the range of such ratios derived from other assessment data, as is shown in the summary that Roberts submitted to the Board. Therefore, the Board was not compelled to conclude that a material disparity separated the assessment of Roberts' property from other parcels.

Because the Board did not err in denying Roberts' abatement appeal, the court need not and does not address the Town's argument that a prior tax abatement proceeding barred him from pursuing his appeal to the Board.


The entry shall be:

For the foregoing reasons, the decision of the Town of Southwest Harbor Board of Appeals is affirmed.


Dated: January 30, 2004`

_____
Justice, Maine Superior Court


FILED &
ENTERED

FEB 0 4 2004

SUPERIOR COURT
HANCOCK COUNTY

5