STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTION
Docket Nos. AP-03-15, 16
JLH - HAN - 3/4/2004

Town of Castine,
        Appellant

v.

Mary K, Fitzsimmons,
        Appellee

MAY 25 2004

******************

Order on Appeal

Town of Castine,
        Appellant

v.

William R. Light, Jr. et al.,
        Appellees

In each of these actions, pursuant to 36 M.R.S.A. § 844 and M.R.Civ.P. 80B, the Town of Castine appeals from separate decisions issued by the Hancock County Commissioners granting abatements of the 2002 municipal property tax liabilities of the appellees on their separate parcels of real estate located in Castine. Although these two cases have not been formally consolidated on the appeals at bar, they raise the identical dispositive issue, and the court addresses these appeals jointly. The record on these appeals includes transcripts of the hearings relating to the appellees' abatement applications, held before the county commissioners on the same day. In their

1

presentations on this appeal, the parties have drawn on both hearing transcripts in a unified way. Further, at the second of the two hearings, the Town's counsel acknowledged that some of the evidence was common to both matters, *see* Light R. 12 at p. 20, and it is apparent that the parties in the second case relied on the commissioners' familiarity with the circumstances of the abatement issues, which had been developed at the first hearing involving Mary Fitzsimmons's case. Thus, with respect to the factual development of these cases, where appropriate (particularly with respect to the historical background of the assessment process), the court relies on portions of both transcripts interchangeably. Further, the court has considered the remaining components of the records on appeal and the parties' written submissions.

The Town of Castine recently has conducted a comprehensive re-evaluation of property value assessments in that municipality. The actual assessment work was conducted by an outside certified appraiser, John Doan, who is affiliated with RJD Appraisal. Doan himself has conducted appraisals in 30 municipalities. As part of his work, Doan formulated opinions regarding the base acre valuation that would serve as the starting point for assessing the value of individual parcels of property in a particular tax district, which is designated by identifying groups of parcels with similar characteristics in a geographical area. That base assessment reflects the value of a one acre lot. In residential areas of relatively high density (that is, in areas where house lots tend to be small), a calculation is applied to arrive at a base valuation that accounts for the first half-acre of the parcel and, for waterfront lots, the first 100 feet of water frontage. That calculation consists of multiplying one-half of the full acre value by its square root. (If the full base acre valuation were simply divided by two in order to determine the value of one-half acre, then the value of the one-half acre lot would be understated because the value of a one-half acre parcel is greater than half the value of a full acre parcel. Thus, a geometric rather than arithmetic reduction factor is used.) Then, this base value, which is assigned to all parcels within a single tax district, is adjusted to account for factors that are unique to the individual parcel that is the subject of that assessment. These adjustments take into consideration such circumstances, among others, as the actual size of the lot in relation to the one-half acre standard, the actual amount of frontage in relation to the 100 feet standard, and any limitations on the use of the property.

2

After Doan conducted his work as the assessing agent, he submitted his opinions of value to the Town's Board of Assessors, who are elected municipal officials but who are not certified assessors. The members of the board accepted Doan's recommendations for the base acre valuations in each of the Town's tax districts except for the district in which the appellees' parcels are located. There are seven or eight parcels altogether in that district. Doan arrived at a base acre tax valuation of $500,000 for those parcels. The Town's Board of Assessors concluded that this base value was too low and increased it to $650,000. Thus, the municipal tax liability of the appellees' parcels was grounded on a base valuation that was 30% greater than the amount recommended by the assessor's agent. In adjusting the base acre tax valuation recommended by the assessor's agent, the municipal assessors considered that value in relation to the base valuations associated with the adjacent tax districts, and, in particular, the district that abuts the harbor, which was given a base acre value of $800,000. Based largely on this consideration, the assessors felt that the assessments of properties in the appellees' tax district would be too low if those assessments were predicated on the base value that Doan proposed. In testifying about the nature of the valuation process, Doan noted that the appraisal process is "subjective" and requires the use of the appraiser's best judgment, particularly in the absence of sales data.[1]

The appellees sought an abatement of the 2002 municipal property taxes assessed against their parcels of land. *See* 36 M.R.S.A. § 843. The Town's board denied those requests for abatement. Because the Town does not have a board of assessment review, the appellees filed appeals of the board's decisions to the Hancock County Commissioners pursuant to section 844. As is noted above, on May 13, 2003, the commissioners held separate hearings on the appellees' abatement requests; the hearing on Lights' appeal was held immediately after the conclusion of the hearing on Fitzsimmons' appeal. The appellees' fundamental position, of course, was that the Town's assessments of their property were too high. Their specific challenges, however, were not directed to the base acre tax valuation analysis described above. Rather, they

---

[1] Because of the absence of any recent sales involving the parcels in the appellees' tax district, there did not exist any sales-based information that the assessors could consider in reaching an opinion of value.

3

emphasized specific features of their property that, they claimed, demonstrated the Town's assessment to be excessive. They also drew comparisons to adjoining or nearby properties and argued that the assessed values of their own properties were excessive in relation to the assessments of the others. Despite the nature of the appellees' presentations, in both hearings there was a full presentation of evidence regarding the base acre valuation process, in which the commissioners showed a particular interest.[2]

After the May 13 hearings were closed, two of the three commissioners who were present at those hearings presided at a public meeting held on June 13 (which, apparently, was the next regularly scheduled meeting date for the commissioners), when they engaged in open deliberations about the abatement appeals at issue here. (Even though there were two separate public hearings on the appellees' separate abatement appeals, because those appeals raised some common issues, the commissioners engaged in a single, consolidated deliberative enterprise.) During those deliberations, the participating commissioners voiced their opinions that there was not a "reasonable" or "satisfactory" basis for increasing the base acre valuation from $500,000, as Doan originally recommended to the Town's Board of Assessors, to $650,000, as decided by the municipal assessors. *See* Fitzsimmons R. 13 at pp. 23-24; *see also id.* at p. 27 ("no justification" for that increase). A motion was made to approve a decision that the correct valuation of the appellees' properties rests on the base valuation originally submitted by Doan. *Id.* at pp. 34-35. The two participating commissioners then signed and issued two written decisions (one for each appeal) setting out identical underlying findings and conclusions for each appeal: that the valuation of the subject parcel should be in a specified amount, which the commissioners calculated on the basis of the base acre valuations originally recommended by the assessor's agent, and that "[in] addition . . .the reassignment, by the Castine Selectmen, of the basis for assessment from $500,000 to $650,000 [for the parcels in the appellees' tax district]. . .was arbitrary and discriminatory." In the cases at bar, the Town appeals from the commissioners' decisions.

---

[2] The Town does not contend here that the appellees have waived the argument on which the commissioners ultimately rested their decision. Such an argument would fail in any event because this issue is one that was fully addressed at the hearing, although the appellees did not initiate that discussion at the hearing.

A taxpayer bears the burden of proving entitlement to an abatement of municipal property taxes in one of three alternative ways: by establishing "'that the property is substantially overvalued, there was unjust discrimination, or that the assessment was fraudulent.'" *Ram's Head Partners, LLC v. Town of Cape Elizabeth*, 2003 ME 131, 834 A.2d 916. 919, *quoting City of Biddeford v. Adams*, 1999 ME 49, ¶ 13, 727 A.2d 346, 349. In order to prove overvaluation in the first of these three ways, the taxpayer must present evidence of just value that the board can then evaluate and then compare to the assessed value. *See City of Waterville v. Waterville Homes, Inc.*, 655 A.2d 365, 366-67 (Me. 1995).

Unjust discrimination, which is the second of the three ways that a taxpayer may be entitled to an abatement, exists only if the tax assessor's valuation methodology "necessarily results in unequal apportionment" of a municipality's real estate taxes, which, by constitutional requirement, must be allocated according to the "just value" of those assets. *City of Biddeford*, 1999 ME 49, ¶ 14, 727 A.2d at 349; *see* ME. CONST. art. 9, § 8. A tax assessment system can be established as unlawfully discriminatory in one of two different ways: directly, that is, through proof that the methodology "results in unequal treatment," or inferentially, that is, though proof of "a sufficient pattern of arbitrary reductions below market value, even in the absence of evidence of an explicitly discriminatory methodology." *Ram's Head Partners*, 2003 ME 131, ¶ 13, 834 A.2d at 920. A taxpayer is not required to present separate proof of just value to the tribunal to support a claim of unlawful discrimination, because such a claim is based on a distinct theory of harm than in a substantial overvaluation claim. *City of Biddeford*, 1999 ME 49, ¶ 22, 727 A.2d at 351.

Because a municipality's tax assessment is presumed to be valid, *Ram's Head Partners*, 2003 ME 131, ¶ 9, 834 A.2d at 919, the appellees bore the burden of persuading, in this case, the county commissioners that they were entitled to an abatement. Because the commissioners in fact ordered the abatements, they obviously concluded that the appellees had sustained their burdens. On this appeal, this court examines the decisions of the county commissioners to grant the abatements, rather than the decisions of the Town to deny the abatement requests. *Town of Vienna v. Kokernak*, 612 A.2d 870, 872-73 (Me. 1992). This court must review the commissioners' decisions

"for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Id.* at 872. If the commissioners' decisions are supported by substantial evidence in the case, the existence of evidence that also could have supported a contrary decision does not vitiate the decisions actually reached. *Id.*

Here, the evidence presented to the commissioners in each of these abatement appeals justified the commissioners' conclusion that the subject parcels were substantially overvalued. The commissioners entertained evidence that the Town assessed the value of the Fitzsimmons property to be $412,066. This resulted from the decision of the municipal assessors to increase the base acre valuation from $500,000 to $650,000. Contrary to the Town's arguments on appeal, the appellees did present some evidence regarding their opinion of the fair value of their premises: Fitzsimmons stated that in her view, her property was worth $280,000 (Fitzsimmons R. 13 at p. 6); and Light testified that he thought his property was worth $188,415 (Light R. 12 at p. 6).[3]

More significantly, even without regard to the appellees' specific opinions of market value expressed to the commissioners, the commissioners were presented with evidence that the Town's assessors increased the opinions of value rendered by their agent, by enhancing the base valuation factor recommended by that agent. The commissioners also heard the assessor's agent's quantitative opinion of the base acre valuation, namely, $500,000. This was sufficient to allow a person to work through the calculations – as the commissioners themselves did during their deliberations – to determine what the final assessed value would have been if the assessors had adopted the base acre valuation suggested to them. This evidence builds on the more generalized testimony of the appellees that, in their view, the Town overvalued their land. Thus, this case is distinguishable from one where the taxpayer's evidence of overvaluation rests solely on a methodological challenge to the assessed value as determined by the municipality. *See City of Waterville*, 655 A.2d at 366. Rather, here, the commissioners were persuaded that the assessors erred in rejecting the assessor's agent proposed base

---

[3] Both Fitzsimmons and Light framed those opinions in terms of the figure they thought should be adopted as assessed value. However, because assessed value, fair value and market value all have the same meaning *Quoddy Realty Corp. v. City of Eastport*, 1998 ME 14, ¶ the opinions offered by the appellees to the commissioners are tantamount to the latter.

6

valuation for one tax district in the Town, although accepting the agent's recommendations for all of the other municipal tax districts. Indeed, the nature of the evidence presented to the commissioners could be seen as more persuasive than a bald but alternative suggestion of value. In the cases at bar, the hearing records include evidence of the base acre valuation as proposed by Doan (whom the Town itself at least implicitly acknowledges to be an expert, as shown by the Town's decision to secure his services and accept virtually all of his recommendations), the divergence of opinions between Doan and the Town's assessors, and the quantifiable variances between those opinions.

The Town argues that the commissioners' decisions means that the assessors utterly will be bound by the recommendations of the agents whom they retained to assist them in valuing taxable property within the municipality. This certainly is not the effect of the commissioners' decisions here. As the appellees correctly note, the evidence presented to the commissioners in these abatement appeals would have warranted them in deciding these matters favorably to the Town. However, in these particular cases, the commissioners concluded that the assessor's agent's opinion of the base acre valuation for parcels in the appellees' tax district was entitled to greater weight than the higher valuations assigned by the assessors. The commissioners were not compelled to reach this conclusion, but they did. The dispositive point in these appeals, however, is that the commissioners were not compelled to reject the lower base acre valuation originally proposed by the assessor's agent.

The Town also argues that, notwithstanding the provisions of the commissioners' written decisions, the transcript of their deliberations shows that they did not actually find that the Town's assessments were the product of a discriminatory methodology. The court need not and does not reach this issue, because, as is discussed above, the record supports the commissioners' decision based on the alternative basis of substantial overvaluation.


The entry shall be:

For the foregoing reasons, the decisions of the Hancock County Commissioners to grant the appellees' 2002 municipal property tax abatement appeals are affirmed.

7

Dated: March 2, 2004

_____
Justice, Maine Superior Court

FILED &
ENTERED

MAR 0 4 2004

SUPERIOR COURT
HANCOCK COUNTY

8