STATE OF MAINE                                              SUPERIOR COURT
                                                              CIVIL ACTION
YORK, ss.                                                 DOCKET NO: AP-05-036

                                                          YOR-CM-07/0


SUSAN D. GARVEY,

            Petitioner

      v.                                              ORDER


TOWN OF WELLS,

            Respondent


      This case comes before the Court on Petitioner Susan D. Garvey's appeal
pursuant to M.R. Civ. P. 80B of a decision of the Town of Wells Board of Assessment
Review denying her request for a property tax abatement. Following hearing, the
appeal is Denied.

## BACKGROUND AND ARGUMENTS

      Ms. Garvey owns a mixed-use residential property at 327 Webhannet Drive in
Wells, Maine. The property is located across the road from the beach and shoreland
area. The property was assessed at $633,610, with a building value of $252,860 and a
land value of $380,050. The Town's Tax Assessor (the "Assessor") classified the
residence as a family conversion structure because it is outfitted to provide several
separate dwelling units. The structure has ten bedrooms, three kitchens, and five baths.
The first floor area is a five-bedroom bed and breakfast that operates under a Lodging
Facility License from the Town. The second and third stories are configured and
finished as two separate apartment units. However, the second story apartment is less
than a full story and the third story is a half story finished attic space.

Ms. Garvey filed for a tax abatement, which was subsequently denied by the Assessor on March 21, 2005. Ms. Garvey then appealed to the Board of Assessment Review (the "Board"). After two hearings on the matter, the Board issued written decision denying Ms. Garvey's appeal and at the same time concluding that the lot area of 8,2553 feet was assessed in error. The correct lot area was 7,725 feet. Accordingly, the Board ordered that an abatement be issued for $5,930 in valuation and the corresponding amount in taxes. This appeal followed.

On February 26, 2006, Ms. Garvey filed a motion for admission and production of additional evidence.

## DISCUSSION

a.  <u>Motion for Admission and Production of Additional Evidence.</u>

Ms. Garvey seeks to admit evidence in the form of appraisals, which she contends more definitively establish the "just value" of her property in relation to the other properties in the neighborhood. She explains that she neglected to present this evidence to the Board.

Pursuant to M.R. Civ. P. 80B(f), the Superior Court's review of governmental agency action is limited to the record before the Board. The only avenue for admitting new evidence is seeking a trial of the facts pursuant to M.R. Civ. P. 80B(d). A motion for trial of the facts must be sought within 30 days of the filing of the complaint. Ms. Garvey's motion was filed more than 30 days after the filing of the complaint.[1] Accordingly, this review is limited to the record before the Board.

b.  <u>80B Appeal.</u>

---

[1]     Ms. Garvey's complaint was originally filed on June 14, 2005. The action was subsequently stayed until December 9, 2005, when Ms. Garvey filed her 80B brief. Ms. Garvey did not file her motion for additional evidence until February 27, 2006.

On appeal, Ms. Garvey contends that the Town's assessment overvalued her building and land. She further contends that the methodology used to calculate the valuations, when compared with similar properties in the neighborhood, resulted in unjust discrimination. In response, the Town contends that Ms. Garvey has failed to overcome the presumption of validity accorded the Town's valuation by not meeting the initial burden of proof that the valuation was manifestly incorrect.

1. Standard of review and burdens of proof.

When the Board reviews a disputed tax assessment, it presumes that the Assessor's valuation of the property is valid. *Yusem v. Town of Raymond*, 2001 ME 61, ¶ 8, 769 A.2d 865, 869-70. To overcome this presumption, the tax payer has the initial burden of presenting "credible, affirmative evidence" to meet the burden of persuading the Board that the Assessor's valuation was "manifestly wrong." *Id.*, ¶ 8, 769 A.2d at 870. To meet that burden, the taxpayer must demonstrate that "(1) the judgment of the assessor was irrational or so unreasonable in light of the circumstances that the property was substantially overvalued and an injustice resulted; (2) there was unjust discrimination; or (3) the assessment was fraudulent, dishonest or illegal." *Id.* ¶ 9, 769 A.2d at 870. It is not enough that a taxpayer impeach the methods used by the Assessor; she must also demonstrate that her particular property was overvalued. *Id.* ¶ 13, 769 A.2d at 871. If the taxpayer meets this burden, the Board then makes an independent determination of the property's fair market value. *Id.* ¶ 8, 769 A.2d at 870.

When the Superior Court acts as an intermediate appellate court, it reviews the decision of a town board "for abuse of discretion, errors of law or findings unsupported by substantial evidence in the record." *Weekley v. Town of Scarborough*, 676 A.2d 932, 933 (Me. 1996). This Court will vacate the Board's decision only if the record compels a

3

contrary conclusion to the exclusion of any other inference." *Id.* at 934 (Me. 1996)(citation omitted).

2. Property tax valuation.

The Maine Constitution provides that real estate taxes "shall be apportioned and assessed equally according to the just value thereof." Me. Const. art. IX, § 8. To be just, "(1) property must be assessed at its fair market value; and (2) the assessed value must be equitable, that is, the property must be assessed at a relatively uniform rate with comparable property in the district." *Yusim* at ¶ 9 n.6. (citing *Chase v. Town of Machiasport*, 1998 ME 260, ¶ 11, 721 A.2d 636, 640). In assessing fair market value, although an actual sale very near to the time at which the value is to be fixed is given great weight, *Arnold v. Me. State Highway Comm'n*, 283 A.2d 655, 658 (Me. 1971), a property owner's opinion as to the fair market value of her property is also competent evidence to be considered by the Board. *Landry v. Landry*, 1997 ME 173, ¶ 8, 697 A.2d 843, 845.

3. The assessment of land valuation.

Ms. Garvey contends that her land was overvalued and the assessment resulted in unjust discrimination. First, Ms. Garvey argues that the original 8,253 square feet measurement of the lot area was in error, and that the correct lot area which should have been considered was 7,725 square feet. The record shows that the Town adjusted the assessment and awarded an abatement to reflect the correct square footage. Second, Ms. Garvey argues that because her property is smaller than the other comparable properties in the neighborhood, the assigned $46.05 square foot value, which is higher than some of the larger properties, overvalues her land and results in unjust discrimination.

4

The Assessor testified before the Board that the land pricing methodology recognizes a parcel's size factor, the neighborhood factor, and a condition factor to calculate the market value for each parcel's land area. The Assessor explained the use of land pricing schedules, the premium buyers will spend for smaller properties based on a straight dollar per square foot basis. Land pricing schedules account for the fact that smaller parcels sell for proportionally higher square foot values than similarly located larger parcels. The Assessor provided the Board with a tax map depicting the subject property and other comparable properties to support her contention that the methods used for all the properties were fairly and uniformly applied.

Ms. Garvey provided her own opinion evidence and an opinion letter from a licensed Real Estate broker stating that the land was overvalued. The Board, however, noted that the broker did not testify, and furthermore, he was the rental agent for Ms. Garvey. The Board found that Ms. Garvey's evidence was insufficient to impeach the presumed validity of the land value assessment. The Board found that the Assessor adequately explained the lower square footage values for other comparable properties as being tied to the land pricing schedule applied to value every property. Finally, Ms. Garvey did not claim that the Assessor's alleged discriminatory acts were intentional, an essential element of unjust discrimination claim. *Rams Head Partners LLC v. Cape Elizabeth*, 2003 ME 131, ¶ 11.

4. The assessment of building valuation

Ms. Garvey contends that her building was overvalued and that the assessment resulted in unjust discrimination. First, Ms. Garvey disputes the taxable amount of floor area in the building. She acknowledges that the Assessor measured the building

5

to be 1,836 square feet, 36 feet in the front, 51 feet on the side, and 35 feet in the rear.[3] She contends, however, that when the Assessor took the measurements, the front measurement was 35 feet and 5 ¾ inches and the side measurement was 50 feet 6 inches. She believes that both of those numbers should have been rounded down, not up. The Assessor testified that the width of the building was 35 ½ feet, which is normally rounded up to 36. The Court finds that the Assessor's method of measurement was rational and reasonable.

Ms. Garvey also argues that the Assessor failed to consider that the second and third floors are not full stories, and therefore should have been evaluated using building cost schedules for half or less than full stories. In response, the Assessor explained that she estimated which areas on the second and third stories were functionally equivalent to living areas with full headroom. Then she applied the building schedule for full stories to that reduced area. She testified that the resulting assessment is actually less than if she had more accurately measured the areas and used the half or three quarter story costing schedules for the upper stories. Ms. Garvey did not provide the Board with evidence to impeach the Assessor's testimony on this issue.

Second, Ms. Garvey contends that the assigned percent condition of "73 % good" is too high for her property. She provided the Board with photographs of her property's exterior to demonstrate significant deficiencies when compared with the exterior of other similar properties in the neighborhood. In comparing the photographs of her property with photographs of the exteriors of the other properties with similar or lower percent conditions, there appears to be a discrepancy. However, the Assessor explained that the relative condition of the buildings is assigned by consideration of

---

[3]    Ms. Garvey contends that correct square footage that should have been considered is 1,750 square feet, 35 feet in the front and rear, and 50 feet three inches on the side, which should be rounded to 50, as measured by Ms. Garvey's husband.

6

both interior and exterior characteristics of a structure. The Assessor asserted that even though there were some exterior items that needed maintenance, they did not affect the building's use or utility as a rental unit. Furthermore, the good condition of the interior justified the assigned percent condition. Ms. Garvey did not provide the Board with photographs of the interior of the comparable properties. The only other evidence she provided to impeach the Assessor's valuation was an opinion letter from a licensed Real Estate broker stating that the building and land were overvalued. Again, the Board noted that this broker did not testify, and furthermore, he was the rental agent for Ms. Garvey.

Third, Ms. Garvey contends that the Assessor applied a flawed methodology to arrive at the valuation of the building, which resulted in unjust discrimination. Ms. Garvey asserts that her property, with a condition of 73% has a higher replacement cost than properties with conditions of 91%. In response, the Assessor explained that the square foot replacement cost is higher for Ms. Garvey's property than these other properties because Ms. Garvey's property has more kitchens and bathrooms. The Assessor further testified that she applied the same methodology to all the properties in the neighborhood. Finally, Ms. Garvey did not claim that the assessor's alleged discriminatory acts were intentional, an essential element of unjust discrimination. *Rams Head Partners LLC v. Cape Elizabeth*, 2003 ME 131, ¶ 11.

Here, Ms. Garvey bore the burden of showing that her property valuation was "manifestly wrong." In doing so, she was required to present the Board with "credible, affirmative evidence" of its fair market value. Although Ms. Garvey provided the Board with opinion evidence, color photographs of the exterior of her property and comparable properties, a letter from a Real Estate broker, and tax field cards, she did not provide the Board with a professional appraisal of her property. In examining this

7

evidence, balanced against the testimony and explanations of the Assessor, the Board found Ms. Garvey's evidence of fair market value insufficient to overcome the presumption that the assessment was valid. As such, the Board determined that she did not meet her burden of showing that the assessment was "manifestly wrong."

The role of the Board as fact finder is to determine the weight of the evidence. In reviewing the evidence before the Board, the Court cannot say that the Board abused its discretion, committed error of law or that its findings are unsupported by substantial evidence. The Assessor's explanations of the assessment factors and the methodologies used to calculate the land and building values were reasonable. The record on appeal does not "compel a contrary conclusion to the exclusion of any other inference" that the Board erred when it decided that Ms. Garvey failed to meet her burden of proof of showing her property was irrationally or unreasonably overvalued. In reviewing the evidence before the Board, the Court concludes that Ms. Garvey has not met her burden of proof that the valuation was manifestly wrong to support a claim of overvaluation.

Moreover, the Court finds that the Ms. Garvey did not meet her burden of demonstrating that the assessment resulted in unjust discrimination. She did not claim that the Assessor's alleged discriminatory acts were intentional, nor did she sufficiently impeach the Assessor's testimony that the assessment was uniformly applied. The record does not compel a contrary conclusion.

The entry is as follows:

Petitioner Susan Garvey's 80B appeal is DENIED.


DATE: _____6/2/26_____          _____
                                    G. Arthur Brennan
PLAINTIFF: Pro Se   Susan Garvey    Justice, Superior Court
                    26 Way To The River          DEFENDANT:   Durward Parkinson Esq
                    West Newbury Ma 01985                     62 Portland Rd
                                                             Kennebunk Me   04043-6658

8