STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-12-019
*NM -CUM - 2/1/2013*

MARC B. TERFLOTH,

    Plaintiff

v.

THE TOWN OF
SCARBOROUGH,

    Defendant

DECISION AND ORDER

1 FEB '13 AM 11:00

Before the court is Marc Terfloth's 80B appeal of the decision of the Scarborough Board of Assessment Review (the Board) regarding the property tax assessment of his property in Scarborough. For the following reasons, the decision of the Board is affirmed.

BACKGROUND[1]

Mr. Terfloth purchased property in the Town of Scarborough on December 23, 2009. (Vol. I R. 37.) This property consists of a residence situated on .65 acres of land on the corner of Sanctuary Lane and Black Point Road located in the upper Prout's Neck area of Scarborough. (Vol. I R. 10, 38, 74.) The property has ocean views, but it does not have shore frontage and it is not within the gated community also located on upper Prout's Neck. (Vol. I R. 15, 74.) The property had been on the market since June 23, 2006, and the previous owners had gradually lowered the asking price from $6.2 million to $2.9 million in November of 2009. (Vol. I R. 57.) Mr. Terfloth purchased the property for $2,435,000. (Vol. I R. 75.)

---

[1] Some of this background is taken from Terfloth v. Town of Scarborough, 2011 Me. Super LEXIS 209 (Dec. 30, 2011).

1

The Assessor for the Town of Scarborough evaluated the property for tax purposes. On April 1, 2010, the Assessor valued the property at $3,503,800. (Vol. I R. 3, 64, 75.) Mr. Terfloth applied for an abatement of the assessed value of $1,068,800, which is the difference between the assessed value, $3,503,800, and the purchase price, $2,435,000. (Vol. I R. 1.) The Assessor denied the abatement. (Vol. I R. 2.) Mr. Terfloth appealed the Assessor's denial to the Board[2] and argued that the assessment was manifestly wrong because it substantially overvalued the property and was the result of discriminatory valuation. (Vol. I R. 3, 37.)

The Board held a hearing on May 26, 2011. (Vol. I R. 71.) The Board members discussed the two issues raised by Mr. Terfloth at the close of the evidence. (Vol. I R. 55-64.) Following the hearing, the Board issued a written decision in which the Board denied Mr. Terfloth's appeal. (Vol. I R. 135–36.) On June 7, 2011, Mr. Terfloth requested that the Board reconsider its decision based on additional information about a recent property sale. (Vol. I R. 137–39.) On June 23, 2011, the Board held a hearing on the reconsideration request. (Vol. I R. 184-191.) The Board voted against the motion to reconsider. (Vol. I R. 191.)

Mr. Terfloth filed a Rule 80B appeal. Terfloth, 2011 Me. Super LEXIS 209, at *1. In the decision dated 12/30/11, the court remanded the case to the Board because it failed to make findings of facts and conclusions of law sufficient to permit judicial review.

The Board held a review hearing on 2/9/12. (Vol. II R. 201-35.) Attorney Durwood Parkinson represented the Board. (Vol. II R. 203.) In an undated

---

[2] The plaintiff included an Appraisal of Real Property and a letter from his counsel. (Vol. I R. 4-5.) The Assessor also submitted materials. (Vol. I R. 8.)

decision, the Board unanimously adopted findings of fact and conclusions of law as follows:

(1) Mr. Terfloth "did not meet his burden of demonstrating that the valuation was 'manifestly wrong' or so irrational or so unreasonable in light of the circumstances that the Property was substantially over-valued or that an injustice resulted"; and

(2) Mr. Terfloth "did not meet his burden of demonstrating that the valuation was a result of unjust discrimination and that the Assessor used systematic and intentional methods to create a disparity and that the methodology or assumptions relied upon by the Assessor were unfounded or arbitrary."

(Vol. II R. 238.) The Board unanimously denied the abatement appeal. (Id.) This appeal followed.

DISCUSSION

I.     Standard of Review

When reviewing governmental action under M.R. Civ. P. 80B, the Superior Court reviews the operative decision of the municipality for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." Camp v. Town of Shapleigh, 2008 ME 53, ¶ 9, 943 A.2d 595 (quoting McGhie v. Town of Cutler, 2002 ME 62, ¶ 5, 793 A.2d 504). "Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." Toomey v. Town of Frye Island, 2008 ME 44, ¶ 12, 943 A.2d 563 (quoting Sproul v. Town of Boothbay Harbor, 2000 ME 30, ¶ 8, 746 A.2d 368). "That inconsistent conclusions can be drawn from evidence does not mean that a finding is not supported by substantial evidence." Id. The court does "not make any findings other than those found explicitly or implicitly by the Board" and does "not

3

substitute [its] judgment for that of the Board." Camp, 2008 ME 53, ¶ 9, 943 A.2d 595.

The Town's property tax assessment is presumed valid. See Ram's Head Partners, LLC v. Town of Cape Elizabeth, 2003 ME 131, ¶ 9, 834 A.2d 916. "The taxpayer has the burden of overcoming that presumption." Town of Southwest Harbor v. Harwood, 2000 ME 213, ¶ 7, 763 A.2d 115. The taxpayer must present "credible, affirmative evidence" to show that the assessed valuation was "manifestly wrong":

> To show that the assessment was manifestly wrong, the taxpayer must have demonstrated that (i) the judgment of the assessor was irrational or so unreasonable in light of the circumstances that the property was substantially overvalued and an injustice resulted, (ii) there was unjust discrimination, or (iii) the assessment was fraudulent, dishonest, or illegal.

Muirgen Props., Inc. v. Town of Boothbay, 663 A.2d 55, 58 (Me. 1995). To prove overvaluation, the taxpayer must show that "the assessed valuation *in relation to the just value* is manifestly wrong." Weekly v. Town of Scarborough, 676 A.2d 932, 933-34 (Me. 1996) (emphasis in original). To prove unjust discrimination, the taxpayer must "show that the assessor's system necessarily results in unequal apportionment." Ram's Head, 2003 ME 131, ¶ 10, 834 A.2d 916.

As noted, the Board concluded that the plaintiff failed to meet his burden on both claims. The plaintiff now must show that the record "compels a contrary conclusion to the exclusion of any other inference." Yusem v. Town of Raymond, 2001 ME 61, ¶ 9, 769 A.2d 865.

DISCUSSION

The petitioner argues that the Board erred when it concluded the following: (1) the sale to the petitioner was not an arm's length transaction; and (2) the only way the petitioner could show unjust discrimination was to show that the assessor had used different methodologies for different properties.

Arm's Length Transaction

The Board found: "Despite testimony from Mr. Terfloth and his Appraiser to the contrary, it was not clear to the Board that the sale was an arm's length transaction because of the length of time the Property was on the market." (Vol. II R. 238; see Vol. II R. 218-21.) The Board emphasized the word, "clear." (Vol. II R. 219.)

In June 2006, the original asking price for the property was $6.2 million. The price was reduced to $5.7 million in December 2006. In June 2007, the price was again reduced to $4.7 million. The property did not sell. In 2008, the property was listed for $4.5 million and in September 2008, the price was reduced to $3.7 million. In June 2009, the price was reduced to $2.9 million. The petitioner purchased the property in December 2009 for $2.435 million. (Vol. I R. 40.) The valuation of the property remained at approximately $3,500,000 from 2005 through 2010. (Vol. I R. 93, 110.) The original broker was confident about the initial price. (Vol. I R. 100-01.)

Nearly all sales of lots in this area after the 2005 revaluation were for more than $3 million except for a small lot, a lot at a distance from the Terfloth property, and this sale. (Vol. II R. 237; Vol. I R. 68.) No sales comparable to this sale were

5

offered.[3] (Vol. I R. 18, 91.) As the assessor stated, "I need more than one sale." (Vol. I R. 100, 109.)

The Assessor discussed with one of the sellers a requested reduction in the assessment because they were selling for less than the assessment. (Vol. I R. 108; Vol. II R. 219.) The assessor further testified that this was an arm's length transaction in that it was not a foreclosure but "it's in that range of foreclosure sales." (Vol. I R. 109; see 110.) Based on this record, including the assessor's additional testimony, the Board was not compelled to conclude that this was clearly an arm's length transaction or that the price paid represented the fair market value of the property. (Vol. I R. 109-112; see 100-01.) See Weekley, 676 A.2d at 934 (sale price is evidence of market value).

Unjust Discrimination

After the 2005 revaluation, the assessment ratio for "water-influenced" properties remained fairly constant. (Vol. II R. 237; Vol. I R. 93-94.) The assessor used a uniform methodology. (Vol. I R. 94-98.) As discussed above, the petitioner's appraiser offered no comparable sales and used asking prices.

The Board found: "The Board did not accept as credible the testimony of Mr. Terfloth's appraiser that the assessment was discriminatory in its methodology, as the Assessor equitably used a longstanding assessment methodology as noted in Paragraph 8." (Vol. II R. 238.) The petitioner relies on discussion at the hearing to argue that the Board erred as a matter of law because the focus of a discrimination claim is on the assessor's result and not the assessor's

---

[3] The assessor does not put asking or selling prices on a property. (Vol. I R. 93-94; but see Vol. I R. 87-91.)

6

methodology. (Vol. II R. 224-25; Br. of Pet. 14.); Ram's Head, 2003 ME 131, ¶ 10, 834 A.2d 916.

The Board was permitted to assess credibility and reject expert testimony. See Harwood, 2000 ME 213, ¶ 22, 763 A.2d 115. The discrepancies in results raised by the petitioner's appraiser were addressed by the assessor. (Vol. I R. 99, 103-04, 107, 119-20, 125.) The assessor explained the respondent's practices regarding treating lots owned by the same person as a combined parcel, (Vol. I R. 103), that lots larger and smaller than the base lot size increase and decrease in value but not in direct proportion to the increase or decrease, (Vol. I R. 94, 199), and residential land larger than one acre is treated as excess acreage, (Vol. I R. 95.) The record does not compel the conclusion that the assessment was the result of unjust discrimination. See Ram's Head, 2003 ME 131, ¶ 11, 834 A.2d 916 (unjust discrimination not necessarily established by "sporadic differences in evaluations").

The entry is

The Decision of the Scarborough Board of Assessment
Review is AFFIRMED.

Date: January 31, 2013

Nancy Mills
Justice, Superior Court

7

Date Filed __3-9-12__ __CUMBERLAND__ Docket No. __AP-12-19__
County

Action __80B APPEAL__

MARC B. TERFLOTH                    TOWN OF SCARBOROUGH

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JOHN BANNON ESQ<br>JOHN SHUMADINE ESQ<br>MURRAY PLUMB & MURRAY<br>PO BOX 9785<br>PORTLAND ME 04104 | JAMES KATSIAFICAS ESQ<br>PO BOX 426<br>PORTLAND ME 04112 |

| Date of Entry | |
|---|---|

2012
Received 3-9-12.