STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.

DONALD PETRIN et als.,

        Plaintiffs/Appellants

    v.                                      Docket No. PORSC-AP-17-021

TOWN OF SCARBOROUGH,

        Defendant/Appellee

STATE OF MAINE
Cumberland, ss. Clerk's Office

DEC 01 2017
2:57 p.m.
RECEIVED

_____

KENYON BOLTON, III et als.,

        Plaintiffs/Appellants

    v.                                      Docket No. PORSC-AP-17-022

TOWN OF SCARBOROUGH,

        Defendant/Appellee

_____

ANGELL FAMILY 2012 PROUTS NECK TRUST et als.,

        Plaintiffs/Appellants

    v.                                      Docket No. PORSC-AP-17-023

TOWN OF SCARBOROUGH,

        Defendant/Appellee

## ORDER AND JUDGMENT

These three cases present appeals by Plaintiff property taxpayers ["the Taxpayers"] pursuant to M.R. Civ. P. 80B and 36 M.R.S. § 843(1) from decisions of

1

the Town of Scarborough Board of Assessment Review ["the Board"] on the Taxpayers' applications to the Town of Scarborough for property tax abatements.

## Background

This is the second time the Taxpayers have appealed from the Board's decisions on their abatement requests. Their first appeals were heard in the Business and Consumer Court initially and then in the Supreme Judicial Court of Maine, sitting as the Law Court. *See Petrin v. Town of Scarborough*, 2015 Me. Super. LEXIS 37 (Docket No. BCD-AP-14-03), *vacated and remanded in part*, 2016 ME 136, 147 A.3d 842; *Angell Family 2012 Prouts Neck Trust v. Town of Scarborough*, Me. Bus. & Consumer Ct., Docket No. CV-14-59, *vacated and remanded in part*, 2016 ME 152, 149 A.3d 271.

The Law Court rejected the Taxpayers' appeals on most of the grounds they advanced, but upheld the appeals as they related to the program of the Town of Scarborough ["the Town"] for assessing separate but abutting parcels held in common ownership. The program is described as follows:

"The abutting property program allows a taxpayer who owns multiple abutting lots to elect to have the separate lots assessed as a single unit. The abutting property program results in a lower valuation of the two lots than if they were assessed independently of each other." *Angell Family 2012 Prouts Neck Trust v. Town of Scarborough*, 2016 ME 152, ¶ 16, 149 A.3d 271 (internal ellipses omitted). "This necessarily means that those who do not own abutting lots are subjected to

2

taxes that are not imposed on owners of lots that happen to be abutting." *Petrin v. Town of Scarborough*, 2016 ME 136, ¶31, 147 A.3d 842.

The Law Court concluded that the Town's abutting property program "necessarily results in an unequal apportionment of the tax burden," *Angell*, 2016 ME 152 at ¶21, and violates the Taxpayers' right to equal protection. *Petrin*, 2016 ME 136 at ¶¶31-32. Accordingly, the Law Court remanded the Taxpayers' appeals to the Business and Consumer Court, with directions that the appeals be remanded to the Board for "further proceedings to address the inequality in tax treatment affecting the Taxpayers because of the abutting property program." *Petrin v. Town of Scarborough*, 2016 ME 136 at ¶32, 147 A.3d 842. The Business and Consumer Court remanded the appeals to the Board without retaining jurisdiction.

The Board convened a further hearing on the appeals on three days in March and April 2017, taking evidence and argument. *See* AR 386-711 (transcripts of hearings).[1]

Prior to the first hearing date, counsel for the Taxpayers and the Town submitted position statements to the Board. AR 121-26, 300-09.

The Taxpayers in their statement asked for a 99% reduction in the assessed value of their land (but not assessed value of the improvements on their land), based on what they claimed to be the extent of the improper assessment of undeveloped abutting lots under the abutting property program. AR 126. The Town's statement advised that Maine law calls for the Board to award for "such reasonable abatement as the board thinks proper," AR 301, *quoting* 36 M.R.S. § 843(1), and suggested that

---

[1] Citations to the stipulated Administrative Record herein are in AR [page number] format.

"the maximum remedy is to return the entire program's benefit—dollar for dollar—to the complaining Taxpayers." AR 309.

With the agreement of both the Taxpayers and the Town, the Board decided to expand the scope of the hearing beyond the 2012-13 property tax year that was addressed in the Business and Consumer Court and Law Court decisions. Some but not all of the Taxpayers applied for abatements during the next three tax years as well. *See* Board Decision at 1 & n.1, AR 742. Accordingly, the Board took evidence on what property tax abatements the Taxpayers should be granted for the 2013-14, 2014-15 and 2015-16 tax years as well as for the 2012-13 tax year. *Id.* The abutting property program was discontinued in 2016 after the Law Court decisions had issued. *See id.*

The Administrative Record includes numerous exhibits and data concerning the effects of the abutting property program on the tax base as a whole, on the abutting lot owners who benefited from the program, and on the Taxpayers:

- The number of the abutting lot owners who benefited from the abutting property program varied by tax year. The Town calculates that there were 37 abutting lots assessed at below-market rates during the 2012-13 tax year, but 18 of those were assessed at full value as of 2014, leaving only 19 abutting lots still under-assessed as of 2016. AR 300.

- After the Law Court decision issued in 2016, the Town revalued all of the unimproved abutting lots, with most increasing in assessed value.

4

AR 408-10. Those that did not see a significant increase in assessed value were unbuildable or lacking in access. AR 406-08.

- According to the Town's calculations, the unimproved abutting lots in the program were assessed in the 2012-13 tax year at more than 82% below their market value.[2] *See* table at Tab 8, AR 293-94.

- However, the total land portion of the assessment for those the Taxpayers (meaning the assessment for both abutting lots owned by each taxpayer) reflected a much lower discount off market value—the total land assessment for those the Taxpayers was at a discount averaging 31.48% off market value for the 2012-13 tax year. *See* table at Tab 9, AR 295-99. The difference in the size of the discount is due to the fact that the improved lots abutting the under-assessed lots were assessed at market value, bringing the combined assessed value much closer to market value. *See id.*

- The discount off market value for the total assessment (for all land and improvements) for the Taxpayers in the abutting property program averaged 19.64% over the four-year period. *See* table at Tab 7, AR 289-

---

[2]  It is interesting to note that the biggest discount given under the abutting property program went to one of the Taxpayers in the initial *Angell* case—the 26 Jocelyn Rd. Nominee Trust. *See* 2016 ME 152, ¶ 2, 149 A.3d 271.  According to the Town, the unimproved abutting lot owned by the Trust was assessed at just 0.31% of its market value, or a 99.69% discount off market value. *See* table at Tab 8, AR 294. This discount is the justification for the Taxpayers' request in their Position Statement submitted to the Board for a 99% discount in their land assessments. *See* Position Statement at 6, AR 126.  The Trust is not a party in the present cases, presumably because it would not be entitled to any property tax abatement due to the program.

92. This is because the structures and other improvements were assessed at market value.

- During the four tax years in question, the Taxpayers who participated in the abutting property program were assessed $395,397.90 less than they would have been had their unimproved abutting lots been assessed at market value. *See* table at Tab 25, AR 385 (Town Ex. 15). *See also* AR 420-21.

- The Taxpayers paid a total of $13,591.42 more in property tax as a result of the abutting property program during the tax years for which they requested abatements. *See* tables at Tab 12, AR 311-12; *see also* AR 431.

After the evidence, the Board heard closing argument from counsel for the Taxpayers and for the Town. *See* AR 641-51 (Town closing argument); AR 651-661 (Taxpayer closing argument).

During their closing argument, the Taxpayers proposed two alternative formulae for the appropriate abatement, based on the Town's calculations regarding the average discounts off market value granted during 2012-13 through the abutting property program. The Taxpayers proposed that the Board award them abatements measured by either a 31.48% reduction in the land only portion of the Taxpayers' assessment or a 19.64% reduction in the Taxpayers' total assessment for land and improvements. AR 655-56, 659. These percentage discounts correspond to the average percentage discounts in the combined land assessments and the land and

improvement assessments respectively of the lot owners who participated in the abutting property program in 2012-13.

In its closing argument, the Town proposed abatements calculated by allocating each Taxpayer a share of the $395,398 that the Taxpayers in the abutting property program had saved in taxes, for those tax years between 2012 and 2016 in which that particular Taxpayer had applied for an abatement. AR 648-49; *see* table at Tab 25, AR 385. Specifically, the total amount saved for each tax year would be distributed to the Taxpayers who had filed for abatements for that year, in proportion to each Taxpayer's assessed land value for that year. *See* AR 648-49. Thus, for example, the $116,836.32 that the abutting property program had saved the participating property owners for the 2012-13 tax year, *see* table at Tab 25, AR 385, would be distributed among the Taxpayers who filed for abatements for that tax year, in proportion to their assessed land values that year.

According to the Town's calculations, this allocation would result in each Plaintiff receiving an eight percent reduction in the value of the land portion of the assessment for each tax year in which that Plaintiff had applied for an abatement. *See* AR 650. The Town argued that the Taxpayers would realize a greater benefit by being granted a percentage abatement rather than a dollar share of the amount saved by the abutting lot owners, because the average value of the Taxpayers' properties was greater than the average value of the abutting lot owners' properties. AR 648-49.

The Board convened for deliberations and its decision May 10, 2017. *See* AR 712-41 (transcript of deliberations and vote). As a result, the Board issued a written decision titled Findings of Fact, Conclusions, and Decision. AR 742-46 [hereinafter "Board Decision"]. The Board voted to adopt the Town's proposal for calculating the abatement, and voted to grant each of the Taxpayers a property tax abatement amounting to "8 percent of the total value of the Taxpayers' land valuation, exclusive of improvements, plus 7 percent interest." Board Decision at 5, AR 746. As noted above, the abatement applied during each of the four tax years at issue for which that Plaintiff had applied for an abatement.

In their appeal, the Taxpayers contend that the Board failed to comply with the Law Court mandate and failed to grant an abatement that reasonably addresses the discrimination and violation of the Taxpayers' right to equal protection that the remand was intended to cure. The Town contends that the Board granted the abatement that it thought reasonable and proper, in compliance with the Law Court mandate and applicable law.

<u>Analysis</u>

*1. Standard of Review*

Under the statute defining the authority of a board of assessment review to award a property tax abatement, the Board is to award "such reasonable abatement as the board thinks proper." 36 M.R.S. § 843(1). The statute thus vests the Board with broad, but not unconstrained, discretion—the abatement may be what the board thinks proper, but it still must be reasonable. When a board's award of an

8

abatement is challenged in court, the court's task is to determine whether the board's determination of what constitutes a "reasonable abatement" is supported in the evidentiary record.

In *Town of Southwest Harbor v. Harwood*, the Law Court framed the standard of review as follows:

> [I]n an appeal from a Board's grant of tax abatement, we review the record to determine, first, whether the taxpayer presented credible, affirmative evidence to meet his or her burden of persuading the Board that the assessor's valuation was manifestly wrong. If the record confirms that the taxpayer did present such evidence, we review the Board's independent determination of the just value of the property for findings unsupported by the record, error of law, or abuse of discretion 2000 ME 213, ¶8, 763 A.2d 115 (internal quotes and citations omitted).

> *See also Town of Vienna v. Kokernak*, 612 A.2d 870, 873 (Me. 1992) (commissioners' abatement decision upheld based on substantial evidence in the record).

In this case, the Taxpayers have already met their burden to show that the valuation of their properties was manifestly wrong, so only the second step is in question. Ultimately, the question before the court is whether the Board's abatement decision, was reasonable in light of the purpose of the remand, the evidence before the Board, the applicable law, and the findings made by the Board.

2. *The Board's Abatement Decision*

As noted above, the purpose of the remand was for the Board to conduct "further proceedings to address the inequality in tax treatment affecting the Taxpayers because of the abutting property program." *Petrin v. Town of Scarborough*, 2016 ME 136 at ¶31, 147 A.3d 842. The abutting property program "deprive[d] the Taxpayers of a rough equality in tax treatment of similarly situated property

9

owners." *Id.* ¶45, *quoted in Angell Family 2012 Prouts Neck Trust v. Town of Scarborough*, 2016 ME 152 at ¶36, 149 A.3d 271.

The Board's decision to grant the Taxpayers a property tax abatement was the appropriate response to the remand—"an abatement is the proper remedy for unjust discrimination." *Rams Head Partners, LLC v. Town of Cape Elizabeth*, 2003 ME 131, ¶15, 834 A.2d 916, *citing Shawmut Mfg. Co. v. Town of Benton*, 123 Me. 121, 128, 122 A. 49, 52 (1923).

It is the Board's methodology in determining the amount of the abatement that the Taxpayers challenge. The Taxpayers asked the Board to grant them abatements in the form of percentage discounts off market value comparable to the percentage discounts given to abutting lot owners through the Town's discriminatory abutting property program.

However, the Board used a different methodology. It took the total dollar amount saved by the abutting lot owners during each tax year as a result of the discriminatory program and divided that dollar amount among all of the Taxpayers who had applied for an abatement for that year, in the form of a percentage abatement of the Taxpayers' land assessment. Thus, the abatement granted by the Board is a function of two variables: the dollar amount saved by the under-assessed abutting lot owners and the total number of Taxpayers who requested abatements in that same year.

The first variable--the total dollar amount saved by the under-assessed taxpayers—is relevant to determining a reasonable abatement, because it measures

the extent of the discriminatory practice. Basing an abatement to remedy discrimination upon the extent of the benefit conferred by the discriminatory practice is certainly reasonable.

However, it is the second variable in the Board's abatement equation—the total number of Taxpayers—that renders the Board's decision indefensible as a reasonable abatement. The size of the group that has been wrongfully discriminated against has little, if anything, to do with what remedy each member of the group is entitled to receive. As the Taxpayers point out, the way the Board has structured the abatement means that, had there been five in their group instead of more than 50, the abatement for each would be ten times greater. Had there been 500 in the Taxpayer group, the abatement for each would be one-tenth of what it is.

The Board's abatement formula means that the more widespread the discriminatory practice, the less those affected by it are entitled to receive as a remedy. This inverse relationship between the number of people who were discriminated against and the value of the abatement each is entitled to receive illustrates, as much as any other point, the unreasonableness of the Board's abatement decision. A reasonable tax abatement to rectify unjust discrimination does not depend on how many people are entitled to receive the abatement. The Board's abatement formula does not achieve the "rough equality" of treatment that the constitution requires.

Arguably, on the other hand, whether a board of assessment review's abatement decision is reasonable can—and perhaps should—be determined without

11

consideration of the method by which the board reached its decision. If the abatement itself—the bottom line—is a rational one, should it matter how the board reached it? In this case, even if the court reviews the abatements granted to the Taxpayers without considering the flawed methodology by which they were derived, the abatements do not withstand scrutiny. Because there are so many more Plaintiff Taxpayers than there were favored abutting lot owners, especially in the later of the four tax years in question, the abatement amount granted to the Taxpayers—considered either as a percentage reduction in assessment or as a dollar reduction in property tax—does not render the tax treatment of the Taxpayers roughly equal to the favored tax treatment granted to the abutting lot owners.

Accordingly, the court is compelled to vacate the Board decision and to remand these appeals to the Board for a redetermination. The Taxpayers want the Board decision vacated, but they want the court to substitute its own judgment for that of the Board, a step the court is unwilling to take. In the alternative, they ask that the court issue "detailed instructions on how the remedy is to be calculated." Plaintiffs' Rule 80B Brief at 27.

The remainder of this decision attempts to respond, to the extent appropriate, to both the Taxpayers' request that the court give detailed instructions and the Board's effort to frame a reasonable abatement without much guidance in how to do so. *See* AR 678-80, 684-85, 687, 689. The Board has substantial discretion, keeping in mind that the Plaintiffs are entitled to "rough equality" in treatment with the favored abutting lot owners. *See Petrin v. Town of Scarborough*, 2016 ME 136,

¶¶ 24, 38, 147 A.3d 842. Thus, were the Board to grant the Plaintiff Taxpayers the same average benefit that the favored group received, that clearly would be a reasonable response.

At oral argument, the court asked whether "rough equality" could be measured in terms of a dollar reduction in property tax instead of in terms of a plainly defined the abatement granted to Plaintiffs in terms of the dollars saved in taxes by the abutting lot owners as a result of the abutting property program, and might decide to do so again on remand.[3]

As noted above, using the benefit conferred by virtue of the discriminatory program as the basis for the abatement is a reasonable means—arguably the best means—of achieving the constitutionally required "rough equality" in treatment. Where the Board went wrong, in the court's view, is in dividing the total value of the benefit conferred by the total number of Taxpayers. Because there are significantly more Taxpayers than there were favored abutting lot owners, the result of that division was to grant the Taxpayers, as a group and, at least in some cases, individually as well, an abatement significantly less valuable than the average benefit realized through the abutting property program by the abutting lot owners.

The parties have filed post-argument memoranda addressing the question whether the abatement for each of the Plaintiff Taxpayers could be reasonably

---

[3] The Taxpayers' November 30, 2017 Joint Rule 80B Post-Argument Reply Brief to the court refers at page 4 to "the court's proposed flat average abatement." The court is not "proposing" any particular level or method of abatement. The Board's prior abatement decision plainly sought to measure the abatement in terms of the dollar benefit conferred by the favored program, and the court's question was intended to explore the Board's discretion to do so, in case the Board on this second remand decides to use the same starting point for its abatement decision.

structured in terms of a reduction in land assessment for each year in which that Plaintiff Taxpayer applied for an abatement that results in the same dollar reduction in property tax (instead of a percentage reduction in assessed value) that the favored abutting lot owners received, on average, during that year.

The discriminatory abutting property program was structured in terms of a dollar reduction in the assessed value of the abutting lot rather than an across-the-board percentage reduction in assessed value. Moreover, the percentage reductions in the value of abutting lots varied widely. Those facts suggest that an abatement that measures "rough equality" in terms of dollars saved in taxes rather than in terms of a percentage reduction would be a reasonable one.

The Taxpayer Plaintiffs are vehemently opposed to an abatement methodology that grants them the equivalent dollar value of the benefit granted to the favored abutting lot owners. They say that they are entitled to the same average percent reduction in assessed combined land value that the favored group received.

The Taxpayers' properties, on average, are assessed at several times more than the properties of the abutting lot owners who benefited from the program, so granting the Taxpayers the same average percentage reduction in overall land assessment would mean the Taxpayers as a group save many more dollars in property taxes than did the group benefited by the abutting property program. However, the Taxpayers point out that the abutting property program's benefit in terms of tax dollars saved rose in value in proportion to the value of the abutting

lots, and they contend that "rough equality" requires that their abatements be structured similarly. *See* Plaintiffs' Joint Rule 80B Post-Argument Reply Brief at 4 (Nov. 30, 2017).

The court's research has not revealed any dispositive authority one way or the other on the question of whether the "rough equality" needed to redress unjust discrimination can only be measured in terms of a percentage reduction in assessment as the Plaintiff Taxpayers contend, or whether it could be measured by reducing the land assessments of the Taxpayers' property to confer the same dollar reduction in property tax as the average reduction obtained during that tax year by the favored lot owners. The question may be academic if the calculation would be too difficult, as the Town's post-argument memorandum suggests.

In any event, the Board's task is to grant an abatement will place each of Plaintiff Taxpayers in a position roughly equal to the favored abutting lot owners for each tax year in which that Taxpayer applied for an abatement.

### 3. *Interest*

The Board appropriately voted to award interest on the abatement at 7% running "from the date of the overpayment." AR 739. Accordingly, interest on the amounts to be refunded to each Taxpayer due to abatements should be calculated from the date on which the Town received any overpayment of property tax attributable to the abutting property program.

## Conclusion

For the foregoing reasons, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. The appeals of the Plaintiffs in all of these consolidated cases are hereby granted.

2. The May 10, 2017 abatement decisions of the Town of Scarborough Board of Assessment Review on the abatement applications of the Plaintiffs in these consolidated cases are hereby vacated.

3. The Plaintiffs' abatement applications are hereby remanded to the Town of Scarborough Board of Assessment Review for further proceedings consistent with this decision.

4. The court does <u>not</u> retain jurisdiction of these appeals.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this Order and Judgment by reference in the docket.

Dated 1 December 2017

_____
A. M. Horton, Justice

16

Consolidated cases AP-17-21, AP-17-22, AP-17-23

*Donald Petrin, et al.*
*Kenyon Bolton, III, et al.*
*Angell Family 2012 Prouts Neck Trust, et al.*

    *vs.*

*Town of Scarborough*

**Attorney for Petrin Appellants:**

John Shumadine, Esq.
PO Box 9785
Portland, ME  04104

**Attorney for Bolton Appellants:**

William Dale, Esq.
PO Box 4510
Portland, ME  04112-4510

**Attorneys for Angell Family Appellants:**

Kris J. Eimicke, Esq.
Jonathan Block, Esq.
Merrill's Wharf
254 Commercial St.
Portland, ME  04101

**Attorney for Appellee:**

Michael A. Hodgins, Esq.
PO Box 5057
Augusta, ME  04332-5057