STATE OF MAINE                                                    SUPERIOR COURT

Cumberland, ss.

REC'D CUMB CLERKS OF(
JAN 14 '19 AM 8:37

DONALD PETRIN et als.,

                    Plaintiffs

          v.                                        Docket No. PORSC-AP-18-26

TOWN OF SCARBOROUGH,

                    Defendant

_____

KENYON BOLTON, III et als.,

                    Plaintiffs

          v.                                        Docket No. PORSC-AP-18-30

TOWN OF SCARBOROUGH,

                    Defendant

_____

ANGELL FAMILY 2012 PROUTS NECK TRUST et als.,

                    Plaintiffs

          v.                                        Docket No. PORSC-AP-18-24

TOWN OF SCARBOROUGH,

                    Defendant

_____

TOWN OF SCARBOROUGH

                    Plaintiff

          v.                                        Docket No. PORSC-AP-18-31

DONALD PETRIN et als.,

                    Defendants

1

DECISION AND JUDGMENT

The Plaintiff taxpayers ["the Taxpayers"] in three of these consolidated cases have appealed pursuant to M.R. Civ. P. 80B and 36 M.R.S. § 843 from the decision of the Town of Scarborough Board of Assessment Review ["Board"] on the Taxpayers' applications for property tax abatements. The fourth case is a Rule 80B appeal from the same decision taken by the taxing municipality, the Town of Scarborough ["Town"].

The cases were consolidated for purposes of briefing and scheduling.

The two issues presented in the Taxpayers' appeals are:

(a) what remedy in terms of tax abatements should be granted to Taxpayers? A sub-issue is whether the Taxpayers are constitutionally entitled to the abatement they seek or simply entitled to a reasonable abatement.

(b) what rate or rates of interest should the Town be required to pay on the tax abatements and over what period should interest run?

The Board decision at issue is the second decision the Board has made regarding the Taxpayers' abatement requests. The court vacated the first decision, and the Town's appeal asks the court, in effect, to change that ruling and reinstate the first decision.

*Background*

The Taxpayers all own property in the Town of Scarborough. The Taxpayer Plaintiffs in the *Petrin* case own property in the Pine Point and Higgins Beach areas

of Scarborough. The Taxpayer Plaintiffs in the *Bolton* and *Angell Family* cases all own properties on or near Prouts Neck in Scarborough, where average land values are far higher than average land values in the Pine Point and Higgins Beach areas.

In Scarborough, property taxes due for a given tax year are paid in two equal installments.

This is the third round of appeals that the three sets of Taxpayers have taken from the Board's decisions on their abatement requests. In each instance, the appeals of the three sets of Taxpayers were consolidated for all purposes.

The Taxpayers' first round of appeals were heard in the Business and Consumer Court initially and then in the Supreme Judicial Court of Maine, sitting as the Law Court. *See Petrin v. Town of Scarborough*, 2015 Me. Super. LEXIS 37 (Docket No. BCD-AP-14-03), *vacated and remanded in part*, 2016 ME 136, 147 A.3d 842; *Angell Family 2012 Prouts Neck Trust v. Town of Scarborough*, Me. Bus. & Consumer Ct., Docket No. CV-14-59, *vacated and remanded in part*, 2016 ME 152, 149 A.3d 271. Those appeals challenged the Town's revaluation of waterfront and water-influenced properties, and also challenged the constitutionality of the Town's program for assessing separate but abutting parcels held in common ownership ["the abutting property program"].

The Law Court rejected the Taxpayers' appeals on most of the grounds they advanced, but upheld the appeals as they related to the abutting property program:

> The abutting property program allows a taxpayer who owns multiple abutting properties to elect to have the separate lots assessed as a single unit. The abutting property program results in a lower valuation of the

two lots than if they were assessed independently of each other." *Angell Family 2012 Prouts Neck Trust v. Town of Scarborough*, 2016 ME 152, ¶ 16, 149 A.3d 271 (internal ellipses omitted). "This necessarily means that those who do not own abutting properties are subjected to taxes that are not imposed on owners of lots that happen to be abutting."

*Petrin v. Town of Scarborough*, 2016 ME 136, ¶ 31, 147 A.3d 842.

The Law Court concluded that the Town's abutting property program "necessarily results in an unequal apportionment of the tax burden," *Angell*, 2016 ME 152 at ¶ 21, and violates the Taxpayers' right to equal protection. *Petrin*, 2016 ME 136 at ¶¶ 31-32. Accordingly, the Law Court remanded the Taxpayers' appeals to the Business and Consumer Court, with directions that the appeals be remanded to the Board for "further proceedings to address the inequality in tax treatment affecting the Taxpayers because of the abutting property program." *Petrin v. Town of Scarborough*, 2016 ME 136 at ¶ 32, 147 A.3d 842.

In remanding the case, the Law Court did not address what remedy the Board should grant the Taxpayers, but the parties agree that the appropriate remedy is for the Board to grant the Taxpayers a property tax abatement for each of the four tax years at issue—tax years 2012, 2013, 2014 and 2015. They also appear to agree that the abatement should pertain only to the Taxpayers' land assessment, because the discriminatory abutting property program benefited only the owners of unimproved abutting properties.

On the other hand, the parties have a fundamental disagreement about how the amount of the abatement should be determined. The Taxpayers have argued consistently that they are constitutionally entitled to the same 31.48% reduction in

the valuation of the land portion of their properties that the beneficiaries of the discriminatory program received, on average, over the four tax years at issue. *See* Plaintiffs' Joint Rule 80B Reply Brief at 3 ("For reasons they have already explained, Taxpayers believe a 31.48% reduction in land assessments represents a fair "rough equality" with those in the abutting property program. Some in the program got higher benefits, but some also got lower – the 31.48% is the average reduction and therefore a type of midpoint of the benefits of the illegal abutting property program.")

The Town, however, asserts that the Taxpayers are only entitled to a reasonable abatement, based on the statute that calls for taxpayers whose property is over-assessed to receive a "reasonable" abatement. *See* 36 M.R.S. § 843(1).[1]

The Business and Consumer Court remanded the appeals to the Board without retaining jurisdiction.

On remand, the Board decided to grant an abatement to the Taxpayers measured by the total dollar value of the benefit that the abutting property program had conferred upon the lot owners who participated in the program in a given tax year, divided by the number of Taxpayers who filed appeals in each year. Thus, for example, the $116,836.32 that the abutting property program had saved the participating property owners for the 2012-13 tax year would be distributed among

---

[1] At all relevant times, section 843(1) has read: "If a municipality has adopted a board of assessment review and the assessors or the municipal officers refuse to make the abatement asked for, the applicant may apply in writing to the board of assessment review within 60 days after notice of the decision from which the appeal is being taken or after the application is deemed to have been denied, and, *if the board thinks the applicant is over-assessed, the applicant is granted such reasonable abatement as the board thinks proper."* (emphasis added).

the Taxpayers who filed for abatements for that tax year, in proportion to their assessed land values that year. This resulted in each Taxpayer receiving an abatement based on an eight percent reduction in the Taxpayer's land assessment for each tax year in which that Taxpayer had applied for an abatement.

The three sets of Taxpayers again appealed. The appeals were consolidated. *See Petrin v. Town of Scarborough*, Me. Super. Ct., Cum. Cty., Docket No. CUMSC-AP-17-021; *Bolton v. Town of Scarborough*, Me. Super. Ct., Cum. Cty., Docket No. CUMSC-AP-17-022; *Angell Family 2012 Prouts Neck Trust v. Town of Scarborough*, Me. Super. Ct., Cum. Cty., Docket No. CUMSC-AP-17-023.

On the second round of appeals, this court overturned the Board's decision on the ground that dividing the total amount saved by the beneficiaries by the number of Taxpayers to derive the abatement amount was an irrational and arbitrary abatement formula and thus not "reasonable." The problem was that the Board's formula used the number of appealing Taxpayers to determine the amount of the abatement each of them received. About 50 Taxpayers appealed their assessments for a given tax year (the number varies because different numbers took appeals in each of the tax years at issue), but if there had been five Taxpayers, the abatements derived by that formula would have been 80% of land value rather than 8%, and if there had been 500 Taxpayers, the abatements would have been 0.8% of land value.

The standard of review that this court applied to the Board's decision was the standard applied by the Law Court in reviewing the abatement decision of the board

of assessment review in *City of Biddeford v. Adams*—whether the decision reflected any abuse of discretion or error of law. 1999 ME 49, ¶25, 727 A.2d 436.

This court interpreted the standard of review to require, not only that the Board award abatements that were "reasonable" in amount, but also that the abatements be reasonably derived, i.e. based on a "reasonable," rational method or formula.

Based on that understanding of its role, limited though it be, the court concluded that, because the abatement amount awarded to an appealing Taxpayer was a function of a completely arbitrary variable—how many other Taxpayers happened to appeal in a given tax year—the Board's abatement formula was itself arbitrary and not "reasonable" for purposes of section 843(1). Accordingly, the court vacated the Board's award and remanded the appeals to the Board.

The Board conducted further proceedings and issued its decision June 20, 2018. *See In re Petrin, Angel[ l], Bolton, Findings, Conclusions and Decision* (Scarborough, Me. Bd. of Assessment. Rev. June 20, 2018), Administrative Record (AR) 2-1 *et seq.* The Board awarded the Taxpayers abatements based on an abatement formula explained in Exhibit A to the Board decision, *see* AR 2-10. The algorithm involved in the formula entails the following steps:

- First, the formula calculates the total dollar benefit that the abutting property program conferred upon the taxpayers who benefited from the program during each of the four tax years at issue. For example, the total dollar benefit to those taxpayers for the 2012 tax year was $167,359.69.

- Next, the formula divides that total benefit amount into the total tax assessed in the same tax year on the land owned by the Taxpayers who filed appeals in that year. Continuing with tax year 2012 as an example, the total tax assessed on land of the appealing Taxpayers was calculated at $1,254,070.86, so dividing the $167,359.69 figure into the total taxes assessed on the Taxpayers' land at the applicable mil rate yields an abatement figure of 13.35%.[2]

- Lastly, the formula averages the resulting percentage reductions in the Taxpayers' assessments for the four tax years and yields an overall abatement of 14.74%.

As a result, the Board awarded a 14.74% abatement of tax to each of the Taxpayers for each of the years in which the Taxpayer filed an appeal. The Board also awarded the Taxpayers interest on the abatement based on the Town's established interest rate for overpayments of property taxes, and decided that interest should run from the date of the second installment of taxes due, because only at that point did the Taxpayers pay any more than the property tax due for that year.

The three sets of Taxpayers again appealed, based on their contention that they are constitutionally entitled to the 31.48% reduction in land assessments. The appeals have again been consolidated with each other and also with what amounts to a cross-

---

[2] At footnotes 10-11 of their main brief, the Taxpayers point out some errors in the Board's calculations. *See* Plaintiffs' Joint Rule 80B Brief at 11 nn.10-11. None of these errors has a material effect on the results of the abatement formula.

appeal by the Town. At oral argument, the Town's counsel confirmed that the purpose of the Town's appeal is solely to preserve its ability to contend in favor of the Board's original 8% abatement decision—the one that this court did not accept as "reasonable."

*Standard of Review and Burden of Persuasion*

As noted above, the standard of review is deferential—the Board's decision on what constitutes a "reasonable" abatement for purposes of 36 M.R.S. § 843 must be upheld unless the decision was based on an abuse of discretion or an error of law. *See City of Biddeford v. Adams*, 1999 ME 49, ¶ 25, 727 A.2d 436. The court's review focuses on both the abatement award itself and the methodology underlying it.

Although there do not appear to be any Maine cases directly addressing the burden of persuasion on the reasonableness of a tax abatement, the discretionary standard of review applicable to these cases compels the conclusion that the Taxpayers bear the burden of demonstrating that the abatements awarded to them were not "reasonable" within the meaning of section 843, by showing abuse of discretion or error of law.

*Analysis*

1. *Whether the Taxpayers Are Constitutionally Entitled to the 31.48% Reduction in Their Assessed Land Value*

A threshold issue in these cases is whether the Taxpayers are entitled as a matter of constitutional right to the same 31.48% percentage reduction in the assessed value of their land that the discriminatory abutting property program conferred, on

average, upon the abutting property program's beneficiaries. This issue has to be addressed first, because if the Taxpayers are right, then the Board's 14.74% abatement award cannot be upheld as "reasonable."

The Taxpayers contend that the Equal Protection Clause mandates that they be granted the same 31.48% reduction in their land assessments that was on average, granted to the abutting property owners, because only that remedy will achieve the "rough equality" that they say the Maine Constitution mandates. *See* Plaintiffs' Joint Rule 80B Brief at 29 ("In sum, the remedy in this case must cure the Equal Protection injury the Town caused with its 'abutting property program.' Put differently, there must be "a rough equality in tax treatment of similarly situated property owners."") *See Ram's Head Partners, LLC v. Town of Cape Elizabeth*, 2003 ME 131, ¶ 10, 834 A.2d 916 ("The constitutional requirement [for tax assessments] is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners.")

The Town responds by saying that the United States and Maine Constitutions do not mandate the 31.48% abatement remedy that the Taxpayers have embraced. The Town notes that the United States Supreme Court decision in *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Dep't of Business Regulation of Florida*, 496 U.S. 18 (1990) makes it clear that a taxpayer's right to recourse for unlawful discrimination arises under the Due Process Clause of the United States Constitution. Defendant Town of Scarborough's Rule 80B Brief at 15-16. *See McKesson Corp.*, 496 U.S. at 22 ("[T]he Due Process Clause requires the State to afford taxpayers a meaningful

opportunity to secure postpayment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional.")   The Court in *McKesson* also noted that "a State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination."  496 U.S. at 39-40.

There is merit in both sides' positions.   The reasonableness of a legal or equitable remedy can only be evaluated in light of the injustice that the remedy is intended to alleviate.  Thus, the extent to which the discriminatory program benefited the abutting property owners is relevant to the reasonableness of tax abatements meant to remedy the discrimination.  On the other hand, an abatement can be deemed reasonable even if it does not directly relate to the unjust discrimination.  *See City of Biddeford v. Adams*, 1999 ME 49 at ¶ 25, 727 A.2d 436 ("We cannot say that the Board abused its discretion or committed an error of law in granting the abatements that it did. This is not to say that abatements which were more closely related to the discriminatory practices would have been inappropriate.")

Although the Taxpayers' entitlement to relief is rooted, as the Law Court noted, in article IX, section 8 of the Maine Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, it does not necessarily mean that they are entitled to the precise remedy they are seeking.

The Taxpayers have cited a Massachusetts case, *Tregor v. Board of Assessors of Boston*, 377 Mass. 602, 387 N.E.2d 538 (1979), in support of their equal protection claim to be granted precisely the same favorable treatment as the  taxpayers who benefited from the abutting property program.   The Supreme Judicial Court of

11

Massachusetts in *Tregor* indeed decided that the remedy for discriminatory tax treatment should be a reduction in assessment to the "average percentage for the most favored substantial class" of taxpayers. *See id.*, 377 Mass. at 611, 387 N.E.2d 538. In this case, the most favored class consists of the beneficiaries of the Town's abutting property program.

In response to the *Tregor* ruling, the Massachusetts Legislature enacted a statute limiting abatement awards to reductions in assessment to the municipal average percentage assessment, not to the percentage assessment of the most favored class of taxpayers. Several taxpayers sued to invalidate the statute on equal protection and proportionality grounds, and the Supreme Judicial Court upheld the statute, rejecting the equal protection and proportionality arguments:

> In sum, we view the most favored class remedy of Tregor *as a policy-based remedy, not a constitutionally mandated one.* Although this court considered and rejected Boston's 'doomsday' and 'windfall' arguments, the Legislature was free to reconsider the impact of a most favored class remedy on the fiscal integrity of municipalities. The Legislature could reasonably conclude that a most favored class remedy could precipitate a substantial erosion of municipal revenues and a rapid and harsh shift of tax burdens to residential property, such that the orderly transition to revaluation at full and fair cash value would be impeded. Thus, the Legislature's alteration of the Tregor remedy, so as to limit abatements during this transitional period, is rational in its operation and can be supported factually. Accordingly, the plaintiffs' argument that the most favored class remedy is inextricably tied to the constitutional right to proportional taxation must fall before the legislative judgment of how best to effect the public interest.
>
> *Keniston v. Board of Assessors of Boston*, 380 Mass. 888, 898-99, 407 N.E.2d 1275 (1980) (emphasis added) (internal citations omitted).

In Maine, the Legislature has not prescribed any specific methodology for determining the amount of a tax abatement, but the fact that it has established a procedure for applying for and obtaining a tax abatement and has directed that the abatement be in the amount that the reviewing authority deems reasonable is sufficient to satisfy due process.

As to what constitutes a reasonable abatement, the principle of "rough equality" is relevant but the principle can be applied in various ways. One such way is to look at the dollars saved in taxes by the favored class and to confer comparable savings on the appealing Taxpayers, which is essentially what the Board did, at least in its second decision awarding the 14.74% reduction.

Accordingly, this court concludes that, although the Taxpayers' entitlement to an abatement is rooted in their right to equal protection under the United States and Maine Constitutions, the Taxpayers are not constitutionally entitled to the same 31.48% reduction in assessed land value that the taxpayers favored by the abutting property program received, on average. The Taxpayers' entitlement is to an abatement that is reasonable in light of its purpose being to remedy discriminatory taxation.

The question becomes whether the Board's determination can be sustained as "reasonable."

2. *Whether the Abatement Granted to the Plaintiff Taxpayers Was Reasonable*

In this case, the methodology underlying the Board's abatement decision weighs essentially two variables for each of the tax years—the dollar benefit of the

discriminatory program, measured by the taxes saved by the abutting property owners who benefited from it, and the assessed value of the appealing Taxpayers' land.

The Board specifically decided that to grant an abatement in the same average dollar amount that the beneficiaries of the abutting property program saved in taxes would not be an adequate remedy for the Taxpayers with particularly valuable land, so they made the abatement a function of both the dollars saved by taxpayers through the abutting property program and the value of each Plaintiff Taxpayer's land.   In that regard, the Board's formula acknowledges that proportionality is appropriate in in abatement awards as it is in assessment of taxes.

Because the assessed values of the Taxpayers' land parcels are significantly higher, on average, than the assessed values of the combined parcels (abutting and improved) owned by the taxpayers within the abutting property program, the Board's revised formula resulted in a 14.74% reduction in the Taxpayers' land assessments. The 14.74% abatement was less than the average percentage underassessment of the abutting lots under the discriminatory program, but  the abatement is more valuable in terms of dollar benefit than the dollars saved in taxes by the beneficiaries of the abutting property program.

The Taxpayers raise a number of objections to the 14.74% abatement in the tax on their land beyond the fact that it is far less than the 31.48% abatement they seek.

They contend that the Board's 14.74% award does not grant them "rough equality" with the taxpayers who benefited from the abutting property program.  This may be true as to the percentage reduction in assessment, but it is not true in terms of

tax dollars saved. The Board's award grants the Taxpayers as a group abatements worth more in dollar terms than the tax savings realized by most of the taxpayers who benefited from the abutting property program.

The Taxpayers appear to contend, for the first time, that they should not all be granted the same percentage reduction.[3] The Town correctly responds that this change of position should not be considered at this stage. Moreover, the Taxpayers have not substantiated any compelling reason to award differing percentage abatements. The Board's award does differentiate among Taxpayers with different property values—the more valuable the Taxpayer's property, the more valuable the abatement.

The Taxpayers contend that the Board's formula is not rational. Especially in comparison to the Board's arbitrary formula for the 8% abatement, the formula that resulted in the 14.74% abatement was rational and "reasonable" for purposes of the statute.

The Taxpayers point out several errors in the Board's data, but nothing that renders the Board's decision arbitrary or unreasonable.

---

[3] The Taxpayers' initial brief states, "[I]f the BAR's remedy is correct, then consolidation of these cases is improper, notwithstanding the fact that these cases present precisely the same issue to the Court. Consolidation would be improper because the BAR's remedy changes depending upon which case or cases that remedy is applied to." Plaintiffs' Joint Rule 80B Brief at 14. But, as the Town's brief points out, the Board's formula was intended to "account[] for and address[] the Taxpayers' primary objection because it ensured each Taxpayer received a 14.74% reduction in the assessed value of their individual property, thereby accounting for differences in valuation." Plaintiff Town of Scarborough's 80B Brief at 8.

For the foregoing reasons, the court affirms the Board's abatement as a reasonable one.

3.      *The Taxpayers' Entitlement to Interest on the Abatement*

The parties disagree about the Taxpayers' entitlement to interest and how interest should be calculated. The Taxpayers say they are entitled to 25% interest under the Maine statute governing refunds of taxes paid on an assessment of tax to raise funds for an unlawful purpose. *See* 36 M.R.S. § 504. In the alternative they say that they are entitled at least to 7% interest, based on the Town's established interest rate for delinquent tax payments. *See* 36 M.R.S. §506-A. They say interest should be calculated from the date on which any Taxpayer paid more than was due at that time. Because taxes are paid in two installments, the Taxpayers claim interest from the due date of the first installment on the amount by which their payment exceeded the amount actually due, in light of the abatement, as of that date.

The Town says the Taxpayers are entitled to interest at 3%, because the Town has established that as the rate paid on overpayment of taxes. The Town says that interest should run only from the date on which the total amount paid by a Taxpayer exceeded the total amount due for that tax year. Thus, the Town says interest should run only from the date on which the second installment of tax was paid. Lastly, the Town denies that the statute imposing 25% interest on refunds of taxes paid on assessments for an illegal purpose applies to this circumstance.

With regard to interest rate, the applicable statute provides for interest on an overpayment to be paid at the same rate that the town has set for delinquent tax

payments, unless the town has established a different interest rate for overpayments, which must be up to 4% lower than the rate for delinquent payments. *See* 36 M.R.S. § 506-A. Here, the Town has in fact established a 3% rate of interest, which comports with the statute.

Interest should run from the date on which an overpayment was made. An overpayment occurs when the taxpayer pays more than is due. Thus, any Taxpayer who made a first installment payment for more than the amount due in light of the abatement is entitled to interest from that date. A different statute authorizes 8% interest on prepayments of taxes, *see* 36 M.R.S. § 506, the point being that municipalities have to pay interest on taxes paid before they are due.

The undisputed fact is that those Taxpayers who paid the amounts billed to them in the first installment paid more than was actually due at that time in light of the abatements, so they are entitled to interest from the first installment on the amount by which they overpaid what was then due, and from the second installment on the balance of the overpayment.

The Town is right in contending that the statute requiring payment of 25% interest on taxes assessed for an illegal purpose does not apply. *See* 36 M.R.S. § 504.[4] There is no indication that the purposes for which the Town assessed taxes during the

_____

[4] The statute reads: "If money not raised for a legal object is assessed with other moneys legally raised, the assessment is not void; nor shall any error, mistake or omission by the assessors, tax collector or treasurer render it void; but any person paying such tax may bring his action against the municipality in the Superior Court for the same county, and shall recover the sum not raised for a legal object, with 25% interest and costs, and any damages which he has sustained by reason of mistakes, errors or omissions of such officers."

four tax years in question included any "illegal object" or purpose. The invalidity of the abutting property program arose from the method by which abutting lots were assessed, not from the purposes or objects for which the assessments were made.

*Conclusion*

For the foregoing reasons, the court affirms the Board's June 2018 decision in terms of the amount of the abatement and the amount of the interest rate. However, the court vacates the Board's decision as it pertains to the running of interest. Accordingly, the Taxpayers' appeals are granted in part and denied in part.

Based on the court's continued view that the Board's 2017 decision granting an 8% was not reasonable because it was based on an arbitrary and irrational formula, the Town's appeal is denied.

This judgment adopts an abatement decision other than the one endorsed by either side, so neither side can be said to have substantially prevailed. The parties will therefore bear their own costs.

IT IS HEREBY ORDERED AS FOLLOWS:

1. The Plaintiffs' appeals in the cases docketed as CUMSC-AP-18-24, CUMSC-AP-18-26 and CUMSC-AP-18-30 are granted in part, as to the running of interest, and otherwise denied.

2. The Town of Scarborough's appeal in the case docketed as CUMSC-AP-18-31 is denied.

3. The decision of the Town of Scarborough Board of Assessment Review set forth in *In re Petrin, Angel[ l], Bolton, Findings, Conclusions and Decision (*Scarborough,

Me. Bd. of Assessment. Rev. June 20, 2018), Administrative Record (AR) 2-1 *et seq.* is hereby affirmed, except as to the date from which interest on the Plaintiffs' overpayment shall run. Interest at 3% shall run from the date on which any Plaintiff paid more than the amount now determined to have been due and payable as of that date as a result of the abatements awarded.

4. The parties shall bear their own costs.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this Decision and Judgment by reference in the docket.

Dated 11 January 2019

_____
A. M. Horton, Justice

Entered on the Docket: _1-15-19_

19